CHARLES NOYES *versus* CHARLES SHEPHERD & *als.*

In protecting his own property, every person is bound to use ordinary care not to injure the property of others.

Imminent danger from fire or flood, cannot excuse or exempt a person from the use of ordinary care to prevent unnecessary injury to property of others.

What would, under such circumstances, be ordinary care, might differ from that degree of caution and prudence, which would be required when no immediate danger was impending.

If one, in attempting to rescue his own property from such imminent danger, shall do injury to another's property, he is not protected from liability, by the absence of all malicious or evil design, and of all such gross carelessness as would authorize an inference of bad intention.

The cases in which the Court may decline to set aside a verdict, when it was rightfully found, though under erroneous instructions, are only those cases in which the Court is able to perceive that, under correct instructions, a different verdict could not have been rightfully found.

ACTION OF THE CASE. The evidence tended to prove the following state of facts: —

There was a pond of deep water, which had no visible inlet or outlet, upon a hill, half a mile from the Sandy river, having its surface about 100 feet above the surface of the river. At the foot of the hill there was a brook, coming from another direction. The defendant, Shepherd, owned the hill and most of the land between the hill and the river. His dwelling-house, shop and barns were on the margin of the brook. The plaintiff had a dam and mill upon the brook near the river. The water of the brook was found to be insufficient for working the plaintiff's mill; and he had obtained permission from Shepherd to tap the pond, by making a shoal and narrow canal through its bank, to let the water flow into the brook above the mill; upon condition he would insert a flume and secure the water thoroughly from gullying, and letting out the mass of water in the pond. The plaintiff made, and for two years had used the canal; but did not secure it, so as entirely to prevent the water from washing away some of the earth upon the bottom and sides of it.

This action of the water created alarm to Shepherd and to the inhabitants of the village below, lest the bursting out of the pond should inundate and sweep away their buildings. Shepherd put a dam across the canal, but not of sufficient tightness to stop the water from leaking around it, through the banks, which were of gravel and quicksand. The alarm in the community continued to increase. There was much diversity of advice as to the best method for averting the danger. Shepherd and the other defendants supposed that a few feet of the water might be drawn off in safety, by placing a tight platform along on the bottom of the canal, and then removing the dam by degrees to the level of the platform; and that afterwards, by deepening the canal and making a new platform upon the bottom, another few feet of water could be drawn off in safety; and that by continuing that process, the danger might be ultimately avoided. They were admonished that such a course would be unsafe, but concluded to make the attempt. They entered upon the work, and removed a part of the dam. The flow of water was soon too great to be controlled. The channel rapidly grew wider and deeper, and in a few hours the pond burst out. The inundation swept away Shepherd's buildings, the bridge, the plaintiff's dam and mill, and the houses of many other persons, who escaped only at the imminent hazard of life.

This action is brought to recover for the loss of the plaintiff's dam and mill.

WHITMAN, C. J. instructed the jury, that if the defendants were at the pond and aided or assisted Shepherd in letting it out, having good cause to apprehend imminent danger (from the bursting out of the pond) to their own property or that of the neighborhood, this action could not be maintained, unless the jury were satisfied that the defendants had some malicious or evil design toward the plaintiff, or were so grossly careless in what they did, as that the jury, from such carelessness, might reasonably infer that they were actuated by some evil intent; and that a mere mistake or misjudgment in regard to the best course to be pursued, and acting upon such mis-

take or misjudgment would not render them liable, unless the jury were satisfied that there was a want of good faith, or reasonable precaution in what they did to avoid the impending danger. That Shepherd's property being in such danger, the other defendants might well aid him in fairly endeavoring, according to their best skill and judgment, to prevent the mischief feared and impending.

*May*, for plaintiff.

It is conceded that the pond had given indications of bursting out, and that Shepherd's property was in imminent danger. What, then, were the defendants' rights? Could they lawfully let out the water at all? If so, were they bound to the exercise of *extraordinary* care, or of ordinary care, or of no care at all?

The first part of the instructions to the jury was, that the defendants were not liable, unless they had some malicious or evil design, or were guilty of such gross carelessness" as showed an evil intent. The second part of the instructions do not materially qualify the foregoing.

It is true that by implication, the jury might infer from the second half that defendants would be liable for a mere mistake or misjudgment in what they did, *provided* such mistake or misjudgment were accompanied with bad faith or a want of reasonable precaution, and so far as any of the defendants were aiding Shepherd, this part of the instructions seems to require the exercise of *their* best skill and judgment. But in deciding what these instructions mean the Court will look at *all* the language and give effect to its plain and obvious import.

The jury must have understood that a want of reasonable precaution was synonymous with gross carelessness; and that a want of good faith was synonymous with a malicious or evil design. Otherwise they were at full liberty to say, if they thought so, that no care at all, or the very slightest care was reasonable precaution. Who can tell, in any given case, what is *reasonable* precaution, without knowing whether the law of the case requires ordinary care, or extraordinary care, or even

the slightest care? The remark of the Judge, that the other defendants might well aid the defendant, Shepherd, in fairly endeavoring, according to their best skill and judgment, to prevent the mischief feared and impending, does not prescribe the rule of ordinary care as to them; for the exercise of *their* best skill and judgment may or may not have been ordinary care.

The instructions then, fairly understood, excused the defendants from all liability, unless they *had a malicious or evil design*, or were guilty of *such gross carelessness* as would authorize the jury to infer an *evil intent* in what they did.

But the jury should have been instructed that the defendants were liable, notwithstanding the imminent danger to the property of the defendant, Shepherd, if they let out the pond, and the plaintiff sustained damage thereby, unless in doing so they exercised *ordinary care and common prudence.*

The rule of law in such case is, that if the defendants had a right, under the circumstances, to let out the pond, the exercise of such right must be accompanied by a cautious regard to the rights of others. No protection of one's own property will justify the doing of any acts which will endanger the property of another, who is not in fault, unless such acts be done with caution, or at least with ordinary care. *Pantown* v. *Holland*, 17 Johns. 92; *Barnard* v. *Poor*, 21 Pick. 378; *Bachelder* v. *Heagan*, 18 Maine, 32; *Howland* v. *Vincent*, 10 Metc. 371.

"It is immaterial as respects the right of action, whether the acts of the defendants were by their intention and purpose injurious to the plaintiff, or the mischief which ensued was accidental and beside their intention, or contrary to it." *Cole* v. *Fisher*, 11 Mass. 137.

*Sherburne*, for defendants.

The first part of the instructions are so connected with the latter part, that a jury could not have been misled, even if, when standing alone, they would be too strong for defendants.

Assuming it to be necessary that the defendants should have

acted with reasonable precaution or ordinary care, (which amounts to the same thing,) the whole instructions taken together go to that extent. They amount to nothing more than several distinct hypotheses, either of which, if found by the jury, would charge the defendants. If the jury found gross carelessness, or an evil intent, or a want of reasonable precaution, in either case the verdict must have been for the plaintiff.

But the first part of the instructions, if standing alone, would not have been erroneous, as applied to the facts in the case. Whatever was done, if any thing, by Shepherd, was done under the influence of great danger to his property. The danger had been brought upon him by the gross negligence of the plaintiff. The acts of a man so situated, are not to be scrutinized as they might be under other circumstances, and least of all, by the man whose wanton acts caused the injury. Under such circumstances, the plaintiff must prove carelessness so gross as to amount to evil intent, before he can sustain this action.

The burden of proof is on the plaintiff to show either gross carelessness or an evil intent. Such is the substance of the averment in the writ, and it must be proved. It is the gist of the action, and if the court had omitted the last part of the instructions entirely, and the part which the plaintiff complains of had stood alone, it would have been strictly correct upon the facts as reported. *Bachelder* v. *Heagan*, 18 Maine, 32; *Howland* v. *Vincent*, 10 Metc. 372; *Clark* v. *Foot*, 8 Johns. 329; *Thurston* v. *Hancock*, 12 Mass. 220; *Callender* v. *Marsh*, 1 Pick. 418.

The distinctions in the degrees of care, to which the plaintiff's counsel refers, have no application to a case of this kind. They apply more particularly to bailments.

The plaintiff should also show that he acted himself with ordinary care. The evidence is, that he took no care to preserve either his own property or any other. If Shepherd had not used more care than plaintiff did, the pond would have gone out weeks before it did go. Taking the evidence strong-

est against Shepherd, he only removed a dam which he had himself put in to keep the pond within its proper bounds. If, then, the removing this dam really caused the pond to break out, it must necessarily have gone much sooner, if Shepherd had not put it in.

If the defendant, Shepherd, could have saved his property by such precautionary measures as he attempted, it would have been culpable negligence in him not to have done it. 2 Greenl. Ev. § 473. Indeed, it is hard to conceive a case in which one would be authorized to raise his hands for the protection of his property, if this does not furnish it. The pond and the fall were a nuisance, and made so by the plaintiff.

" A nuisance is said to be any thing which worketh hurt, inconvenience or danger. That Shepherd erred in his notions of what could or could not be done, is no evidence of heedlessness or carelessness.

But he did not err. The pond he knew must come out; and the effects were of course uncertain. He had a right to draw it off in the-day time, that if his property was lost, he might at least save himself and family.

But however wrong the instructions might have been, the jury came to a right decision. The burden of proof is on the plaintiff, and there is nothing in the case to show, that there was any want of care on the part of the defendants in what they did, nor that what all or either of them did was the cause of the loss.

If the verdict is right, the Court will not disturb it, however wrong the instructions may have been.

SHEPLEY, C. J. — The rules of law applicable to cases of injury, occasioned by the lawful acts of one person to the property of another, appear to be quite well established.

A person is required so to conduct in the exercise of his own rights and in the use of his own property, as not to do injury by his misconduct or by the want of ordinary care to the rights or property of another.

If the party, whose rights or property has been injured, has by the want of ordinary care contributed to occasion the injury, he will not be entitled to recover damages resulting from it. *Bachelder* v. *Heagan,* 18 Maine, 32; *Kennard* v. *Burton,* 25 Maine, 39; *Barnard* v. *Poor,* 21 Pick. 378; *Howland* v. *Vincent,* 10 Metc. 371; *Clark* v. *Foot,* 8 Johns. 421; *Livingston* v. *Adams,* 8 Cowen, 175; *Gardner* v. *Heartt,* 1 Denio, 466; *Cook* v. *Champlain Transportation Co., ib.* 91; *Massey* v. *Goyner,* 4 C. & P. 161; *Proctor* v. *Harris, ib.* 337.

Imminent danger expected from fire or flood, cannot excuse or exempt one from the use of ordinary care to prevent unnecessary injury to the property of others. What would under such circumstances be ordinary care must be determined by a jury; and it might not be the same care or an equal degree of caution, which would reasonably be expected, when there was little or no cause to apprehend immediate danger. However imminent the danger may be, a person must be held responsible for an injury to the property of another, occasioned by negligence of a less culpable character than such gross carelessness, as would reasonably authorize an inference, that it was done with an evil intent.

The first clause of the instructions appears to have required, that the jury should so find, to authorize a verdict for the plaintiff.

The second clause seems rather suited to guide the jurors in their deliberations respecting the effect of an erroneous judgment formed by the defendants, than to call their attention again to the degree of care, which the defendants were required to exercise. It does not appear to be suited to destroy entirely the effect of the former clause upon their minds and to leave them to conclude, that it was to have no influence. When it is perceived, that the instructions contained in the former clause were erroneous, and that they might and probably did have an influence upon the minds of the jurors, the plaintiff must be considered as aggrieved by the instructions.

The counsel for the defendants insists that the verdict should not be set aside, because the injury was occasioned in part at least by the misconduct or negligence of the plaintiff. No such question appears to have been presented to the consideration of the jury, whose province it was to decide upon it.

He further insists, that the pond had become a nuisance, and that the defendants might lawfully abate it. No such question appears to have been presented to the jury. It is not the duty of the Court to decide it.

He also insists, if the instructions were erroneous, that the verdict was right, and that it ought not to be set aside. The rule deducible from the cases cited to support it, is only applicable to cases, in which the Court is able to perceive, that under correct instructions a different verdict could not have been rightfully found. The present case does not come within the rule.                      *Verdict set aside*

*and new trial granted.*