ZACCHEUS WALWORTH *v.* THE TOWN OF READSBORO.

*Liability of Towns for neglect of their Constable.*

A deed of Machinery prior to the act of 1838, would be void as against the creditors of the grantor, unless accompanied by an absolute change of possession. *Quere* — whether such a deed is brought within the provisions of the said act *prospectively,* from and after the act took effect.

If one has a special interest in property, which he, by deed duly executed, releases and discharges, he will after that time be *estopped* from setting up that interest.

If on trial in the court below, the court charged the jury on questions, some of which may be doubtful, or even if there is error; yet if from the whole case it clearly appears that on another trial a similar verdict must inevitably be rendered, a new trial will not be granted.

Where the plaintiff and his attorney were present on the day of sale, and directed the officer to sell the property according to the statute and for cash, it was held, that the officer was bound to follow these instructions, and that he had nothing to do with former conversations or arrangements between the parties.

The finding of facts by the jury is conclusive, and it will not be presumed that they have neglected to conform to the instructions given, or misapprehended their legal effect.

This was an action on the

CASE, to recover for the neglect of one John Carvey, constable of Readsboro in executing, collecting and paying an execution in favor of the plaintiff against Sylvester and Luna Bishop. The rendition of the judgment in favor of the plaintiff against said Sylvester and Luna Bishop, the issuing execution thereon, and that the same was placed in the hands of Carvey, then constable of Readsboro, for collection, was duly proved. The plaintiff also introduced the return of said Carvey upon said execution, by which it appeared, that on the twenty-eighth day of December, A. D. 1841, said Carvey sold upon said execution certain machinery in a mill or factory, to one Joel Houghton, for the sum of $390, in satisfaction of said execution and all charges. The defendant admitted that the plaintiff demanded of the officer, payment of said execution in the fall of 1842.

The plaintiff then introduced testimony tending to prove that after the sale, the said Joel Houghton let said property remain in the factory, and gave said Bishops license to use it for the

storage of it, until he called for it. It appeared that the machinery was sold on Friday, and the next Monday night, the factory, with the machinery was consumed by an accidental fire.

The defendants introduced in evidence the following deeds :

A deed from Sylvester Bishop, to Caleb Bailey and Samuel Amidon, dated the fifteenth day of May, 1837, and recorded the same day, conveying two-thirds of the machinery in said factory.

A deed from Luna Bishop, to Caleb Bailey and Samuel Amidon, dated the tenth day of September, 1839, and recorded the same day, conveying in mortgage one-third of the machinery in said factory.

Also, a deed from S. & L. Bishop and said Bailey and Amidon, to Joel Houghton and William L. Brown, dated the seventeenth day of December, 1839, and recorded the same day, conveying the real estate and machinery in said factory.

The defendants introduced testimony tending to prove that said first two deeds were executed for the purpose of securing said Bailey and Amidon, against certain liabilities incurred by them, as sureties for said S. & L. Bishop, and to secure debts due from said Bishops to said Bailey and Amidon, such debts and liabilities amounting, December seventeenth, 1839, to more than the value of said machinery, and that it was agreed by the said parties, that said first two deeds were to be void upon the payment of said debts and liabilities, and that the same have not been fully paid.

The defendants also introduced testimony tending to prove, that previous to the seventeenth day of December, 1839, the stock of said Bishops on hand and in process of manufacture, in said factory had been attached by their creditors, and the operations of the said factory suspended ; that the Bishops owed said William L. Brown a small debt ; that the deed to said Houghton & Brown of December 17th, 1839, was given upon the agreement and understanding that said Brown was to furnish some stock, and that the Bishops were to work out the stock in the factory that was attached, under the direction of said Houghton, who was to apply the proceeds in payment of the debts, upon which the stock was attached without reference to the debt due said Brown. The testimony also tended to prove, that the stock on hand was worked out as agreed, the cloth disposed of and the debts upon which it was attached, paid under the direction of Joel Houghton, in the

winter of 1839 and 1840, when the said Houghton and Brown ceased to have any further control or direction of the factory or machinery. The testimony also tended to prove, that at the time of the conveyance on the seventeenth of December, 1839, said Brown agreed to furnish said Bishops stock to work in said factory, for the purpose of enabling them to pay off all their debts, but never furnished them any stock. That after the stock attached was worked out, the factory and machinery remained in possession of the Bishops until the levy of said execution.

The testimony also tended to prove, that the plaintiff's debt, upon which judgment was rendered, existed previous to the seventeenth day of December, 1839, and also, that said Brown resided abroad at and after the giving of said deed of December seventeenth, 1839, and requested said Bailey to see to, and protect the said Brown's interest under said deed and agreement; and also, that on the day of sale of said property, on execution, said Brown was absent, but said Bailey was present, and on that occasion he forbid said constable from selling said property, on the execution, and told him that it was not the property of the said Bishops. The testimony also tended to prove that said Bishops had no property except said machinery, that was liable on execution, and that said Bishops had occupied and used said factory and machinery, from before the date of said first deed, until said sale.

The defendants also introduced testimony tending to prove, that before and at the time of said sale the plaintiff was indebted to one Jonathan Houghton, and Jonathan Houghton was indebted to Denison and Gore, and that it was, before said sale, agreed between the plaintiff, Joel Houghton and Denison & Gore, that said property should be bid in by Joel Houghton, and by him be transferred to Denison & Gore, and that they should apply upon their demands, against Jonathan Houghton, the amount of said sale and the plaintiff should be credited a like amount upon his debt to Jonathan Houghton. And also, that after the sale and purchase by Joel Houghton, said Joel, in the presence of the constable, told the plaintiff that if he had rather have the money than have it go as they had talked, he could have it as quick as a horse could go to Row, (about twenty miles,) and back, the plaintiff replied that he was willing to let it go as they had talked, but nothing was done relating to the adjustment at the time, but the same was by the

Walworth v. Readsboro.

consent of the plaintiff, postponed until Gore should come to Reads-boro again.

It appeared, that at the time fixed for the sale of the property, the plaintiff and his attorney were both present, and before the constable commenced the sale, plaintiff's attorney in his presence and by his direction, told the constable to sell the machinery according to the statute, for cash.

The defendants requested the court to charge the jury, that the deeds of May fifteenth, A. D. 1837, and of September tenth, A. D. 1839, recorded as aforesaid, conveyed to Bailey and Amidon the title to said machinery, and that the possession of said Bishops would not subject such machinery to attachment or execution for their debts, unless the jury should find that said deeds were *fraudulent in fact.*

The court charged as requested as to said deed, dated September tenth, A. D. 1839, but as to said deed, dated May fifteenth, A. D. 1837, charged that the same in this suit, should be treated as void unless accompanied by possession of the machinery in Bailey and Amidon.

The defendants requested the court further to charge the jury as to said deeds, that if the jury should find that they were given to secure said Bailey and Amidon for liabilities contracted by them, as sureties for said Bishops and for debts due said Bailey and Amidon from said Bishops, and to become void upon the payment of said several debts, and that said debts were not paid at the time of the giving of said deed, dated December seventeenth, A. D. 1839, the title to said property became thereby absolute in said Bailey and Amidon.

And that if the jury should find that said deed of December seventeenth, A. D. 1839, was *bona fide* and under an agreement with the several parties thereto, that Brown and Houghton should re-convey said property to Bailey and Amidon, after said demands of Brown and Houghton should be satisfied, and those demands, at the date of said levy and sale had been satisfied, then Brown and Houghton would hold the title only as trustees of Bailey and Amidon, and the lawful ownership would remain in Bailey and Amidon, and if at the sale, Bailey forbid the sale and claimed the property as belonging to Bailey and Amidon, the defendants were not precluded by the act of said Houghton in bidding in the

property at the sale, and from insisting that said property was not the property of said Bishops.

And that if Brown was not assenting to the act of Houghton in said sale and purchase, but the sale was forbid by said Bailey as the agent of Brown, the defendants are not precluded from insisting that one half was not the property of said Bishops, and so the plaintiff can recover but one half the amount of his execution, if the Bishops had no other property which might have been available in satisfaction of said execution.

And further, if the jury should find that Joel Houghton, the purchaser, in the presence of the constable, offered to pay the plaintiff the amount of his bids, and the plaintiff assented to any other mode of payment, the defendants are excused from liability.

The court neglected to charge the jury as requested, any further than is. herein stated. The court among other things charged the jury, " That if they found the conveyance made by the Bishops and Bailey and Amidon, to Brown and Houghton, of the machinery, was made for the purpose and upon the consideration that the same was to remain in the mill, and to be used by the Bishops in working out the stock on hand at that time, for the payment of the debts of the Bishops and then to be re-conveyed to the Bishops, or to Bailey and Amidon, and that after the stock was worked out, in the winter of 1839 and 1840, the machinery remained in possession of the Bishops until the levy, it would be liable to be taken and sold on the execution, notwithstanding the deed to Brown and Houghton. That if they found that the officer was induced by the acts or direction of the plaintiff, to delay or omit the execution of the process, the town is not liable in this action, for any damage occasioned by such delay. That if they found that the plaintiff agreed with the officer that he would look to Joel Houghton, to Jonathan Houghton, or to any other person, for the payment of the execution, and would not rely upon the officer for such payment, the town would not be liable in this action.

That if they found that the plaintiff, after the sale, was offered payment of his execution by the purchaser, and refused to receive it, or agreed that the officer might give credit to the purchaser for any space of time, the town would not be liable in this action, but the plaintiff was not obliged to insist on the immediate payment of money on the day of sale. That although there might have

Walworth v. Readsboro.

been negotiations relative to, and arrangement and making a turn by way of Jonathan Houghton and Gore, before the time of sale, yet if the plaintiff or his attorney, at the time of sale, or before the officer offered the property for sale, directed the officer to sell for cash according to the statute, it would be the duty of the officer so to do, and if he sold on credit " he would be liable, and the town liable in this action for his default."

The jury returned a verdict for plaintiff, December term of the county court, 1851,— PIERPOINT, J. presiding. To the several decisions and charges of the court and neglect to charge the defendants excepted.

*D. Roberts, Jr.* for defendants.

1. That the machinery levied upon and sold, was not, at the date of such sale and levy, subject to be taken on execution against the Bishops. This is a defense. *Adams* v. *Fox*, 17 Vt. R. 361. *Hutchinson et al.* v. *Lull*, 17 Vt. R. 133.

The deed of Sylvester Bishop to Bailey and Amidon, of *two-thirds* of the machinery, fell under the protection of the Act, November 5, 1838, when that act came into operation. Though the act is prospective in terms, it can scarce be doubted that it would embrace the case of a deed executed before that act came in force; but recorded while the act was in force, it became a recorded deed at the moment the act came into operation. REDFI' LD, J. in *Pearson* v. *French*, 9 Vt. 351.

Whether to be treated as recorded or not, it was good between the parties to it, and no other claim had intervened to divest Bailey and Amidon of their title under it, down to December 17, 1839. *Smith* v. *Moore*, 11 N. H. 55.

The mortgage of Luna Bishop to Bailey and Amidon, of the remaining *one-third* of the machinery, September tenth, 1839, was under the act, and was protected by it. December 17, 1839, the debts, to secure which these conveyances had been made, were due and unpaid, and of a larger amount than the value of the machinery. If the first deed is to be treated as an absolute transfer, the title was at that time, as from the first, in Bailey and Amidon to the *two-thirds*; if as a mortgage, like the second deed in terms of the *one-third*; this being personal property, the title of Bailey and Amidon to the whole had become absolute, by non-payment of the debts. *Atwater* v. *Mower*, 10 Vt. 75.

The defendants were entitled to a charge to that effect, but it was refused, though requested.

The deed of December 17, 1839, was duly executed and recorded under the statute of 1838.   And if the interest of Bailey and Amidon, in the *two-thirds* had not been, down to that time, protected by the record of the first deed, their conveyance to Houghton and Brown was equivalent to a taking possession at that moment, and the whole was placed under the protection of the statute, by the record of the deed then executed.

The court erred in deciding that the deed of May 15, 1837, should be treated void in this suit, &c.   Though the deed was in form absolute, it was not for the court to decide it fraudulent, and so void.   This was a question for the jury.   *Gibson* v. *Seymour et al.*, 3 Vt. 565.

At the date of the levy and sale, the property *ipso facto*, had revested in the first owners, Bailey and Amidon, and requiring to that end no re-conveyance.   Such is the law of mortgage of real estate.   21 Wend. 468.   *McDaniels* v. *Reed et al.*, 17 Vt. 674.   Much more of personal, which passes without deed or writing.   *Leighton* v. *Shapley*, 8 N. H. Rep. 359.

An equitable and beneficial ownership, our laws will protect, even against the owner of record.   *Strong* v. *Strong*, 2 Aik. 373.

Bailey was the agent of Brown ; Brown had an equal title and interest with Houghton, and an equal right to direct ; Brown, through Bailey, forbid the sale.   How then could Houghton override the authority of Brown and divest Bailey and Amidon of the title which Houghton and Brown held for them in trust ?

This being a private trust, both trustees must join in the executing of it.   The act of either alone cannot affect the title.   *Low* v. *Perkins*, 10 Vt. Rep. 532.   *Williams* v. *Mattocks*, 3 Vt. 189.

2. The court erred in refusing to charge as requested, and in the charge given, as to the control exercised by the plaintiff in the collection of the execution.   The constable was but the agent of the plaintiff, and it was competent for the plaintiff to take control and direction.   *Felker* v. *Emerson*, 17 W. R. 101.   The testimony tended to show that the plaintiff did take such control as to excuse the sureties of the constable.

The charge of the court was calculated to mislead the jury. Under it they had only to find, that this was a sale upon credit;

in other words, that the officer *in selling,* trusted that the adjustment would be made as had been agreed, (or in the court's language "negotiate relative to") and that he did not get the cash to warrant their verdict. Thus the charge, upon a point supposed, is made fatally conclusive as to the real point and the whole case.

*J. L. Stark, Jr.* and *W. H. Follett,* for plaintiff.

The court was correct in deciding that the deed of May fifteenth, 1837, as far as this suit was concerned, should be treated as void. No statute was then in force, which made the sale of the machinery valid unless accompanied by possession in the vendees, and by the common law such sales were void. *Tobias* v. *Francis,* 3 Vt. 425. *Foster* v. *McGregor et al.,* 11 Vt. 595. *Stiles* v. *Shumway,* 16 Vt. 435.

There was a secret trust in the deed which rendered it void.

The statute of 1838 was prospective in its operation and could not affect contracts previously made. 1 Kent's Com. 454. *Briggs* v. *Hubbard,* 19 Vt. 86. *Woart* v. *Winnick,* 3 N. H. 473. *Lowry* v. *Keyes,* 14 Vt. 66. *Somerset* v. *Dighton,* 12 Mass. 383. *Dash* v. *Van Kleck,* 7 Johns. 493.

By the agreement made on the seventeenth of December, 1839, (and at the date of the deed,) there was a secret trust by which the Bishops had certain advantages in the estate conveyed, and this is a conclusive badge of fraud, and would make the conveyance void, as to the creditors of the Bishops. 1 Swift Dig. 274 and 276. 1 Smith's L. Cases 30. *Coburn* v. *Pickering,* 3 N. H. 415. *Smith* v. *Lowell,* 6 N. H. 67. *Paul* v. *Crooker,* 8 N. H. 288. *Winkly* v. *Hill,* 9 N. H. 31. *Tifft* v. *Walker,* 10 N. H. 150. *Gibson* v. *Seymour,* 3 Vt. 565.

Joel Houghton, one of the vendors of the property, and by the terms of the deed the owner of one-half, was present at the sale on execution, and bid off the property. By this act he would be estopped from claiming the property. *McLeran* v. *Stevens,* 16 Vt. 616.

That the plaintiff was not required to insist on the immediate payment of the money, on the day of the sale is evident, for the execution had not been issued but about one-half a month, and was not returnable under a hundred and twenty days.

As to the neglect of the court to charge as requested, the court

will always presume that the court below did its duty, unless the contrary is made to appear. *Russell* v. *Fillmore*, 15 Vt. 130. *Mattocks* v. *Bellamy*, 8 Vt. 463. *Gilbert* v. *Toby et al.*, 21 Vt. 306.

It does not appear that the court neglected to charge as requested, much less does it appear wherein. Certain affirmative charges are detailed, but it is said that they charged among other things, but what those other things were, and what the charge upon them was, does not appear. For ought that appears, they may have been the very things requested.

The opinion of the court was delivered by

ISHAM, J. The town of Readsboro is prosecuted for the neglect of their constable in not collecting and paying to the plaintiff the avails arising by sale on execution of a quantity of machinery.

The machinery was sold as the property of Sylvester and Luna Bishop, for an amount sufficient to pay the execution of the plaintiff. No objections have been urged as to the regularity of the proceedings in obtaining judgment, or in the sale on the execution. But as a defense, it is insisted that the machinery was not the property of the Bishops; that the officer had no right to take the property on the execution, and that he is accountable to others for its value. That such a defense is available, has been decided in this State. It was so held in the case of *Hutchinson* v. *Lull*, 17 Vt. Rep. 133, and in *Adams* v. *Fox*, ibid 361. The defense is allowed to avoid circuity of action, for it would be worse than idle proceedings to permit the plaintiff to recover in this case, if the officer is responsible for the value of the property to the real owner, and this plaintiff be compelled afterwards to repay that amount as a matter of indemnity to the officer.

The general and important question in the case, therefore, arises, whether this property at the time of the levy and sale on the execution, belonged to the Bishops, and was it subject to be taken on execution at the suit of their creditors, or had it been previously disposed of by them and sold to others, so as to vest in them a good title as against this attachment.

It is not disputed but that this property was originally owned by Sylvester and Luna Bishop; indeed, all persons who now claim it, claim under them by various transfers. And from the time of their undisputed ownership to the time of the levy of the plaintiff's

execution, the property at all times, had been in their custody, control and possession.

Against these important considerations, must the title of the vendees of the Bishops prevail, to make the defense available in this suit. The questions in the case arise upon the evidence introduced by the defendants, and upon the charge of the court in relation to its legal and proper effect. To show that the Bishops were not the owners of this property, and that it was not subject to an attachment at the suit of their creditors, the deed of Sylvester Bishop to Bailey and Amidon of May 15, 1837, of two-thirds of this machinery was introduced, as also the mortgage deed of Luna Bishop to the same persons of one-third, dated Sept. 10, 1839. The first deed purports to be an absolute conveyance of real estate, as well as this machinery, for the consideration of two thousand dollars, but in reality was given for the purpose of securing Bailey and Amidon against certain liabilities incurred by them as sureties, and both deeds were to be void on the payment of such claims. We learn from the case that the claims amounted, on the 17th day of December, 1839, to more than the value of the machinery, and that they have never been fully paid. The latter deed is a mortgage of the same property, conditioned for the payment by Luna Bishop, of about seven thousand dollars, being the supposed amount for which (as is stated in the deed) Bailey and Amidon were liable as sureties. It is insisted by the plaintiff, that notwithstanding the deed of May, 1837, the machinery was subject to be attached and held by him as creditor of the Bishops, as no transfer or change of possession was ever made. And it is stated in the case, that the Bishops after that sale, retained the property in their possession and use, in the same absolute and unqualified manner that it had been previously possessed by them. The court charged the jury, that as this deed was executed in 1837, and before the act of Nov. 5, 1838, it was (so far as this machinery was concerned) inoperative and void as against the creditors of Bishop, unless accompanied by an absolute change of possession and occupancy. The correctness of this principle, which has been so long the settled doctrine of this State, has not been disputed, and had this property been taken at any time after the sale, and before the act of 1838, the application of this principle could not well be resisted. But it has been urged with much force,

and with considerations that renders it difficult to answer, that no change of possession was necessary after the passage of that act. That the deed having been executed with all necessary formalities, and duly recorded on the day of its date, the statute will have the same effect upon the deed, as if it had been executed and delivered after its passage, not that a retrospective effect is to be given to the act, but that the deed is brought within the provisions of the act *prospectively* from and after it took effect. In other words, that the deed became a recorded instrument under the act, the moment the act went into operation. If such effect can be given to this deed under the act, it manifestly answers all the purposes for which it was introduced on the part of the defense, as the attachment of the plaintiff was made after the title of Bailey and Amidon under this deed had accrued, and if the case rested upon this principle exclusively, we are not prepared to say that the title of Bailey and Amidon, under their deed, would be good. We do not, however, feel called upon definitely to decide this question, as a satisfactory conclusion is found in other principles involved in the case.

Under the deed of Luna Bishop, to the same parties of one-third, being the remaining part of the machinery, a change of possession was not necessary, as the deed was executed and recorded after the passage of the act of 1838. The record of the instrument conveying the property, under the provisions of that statute, dispenses with the necessity of a change of possession, and the court as requested by the defendants, instructed the jury that this deed was effectual, as against the creditors of the vendor, unless the deed was fraudulent *de facto*. The jury, by their verdict, have found this deed thus fraudulent; and being so, it will convey no title as against attaching creditors.

A more serious difficulty exists in this case, in relation to the title of Bailey and Amidon under the deeds of Sylvester and Luna Bishop, in considering that title as sufficient to prevail against this attachment. The difficulty arises from the effect of the subsequent deed of this property from Bailey and Amidon to Brown and Houghton, of December 17, 1839. Assuming it to be true that Bailey and Amidon, had under their deeds, a good title to this property against the Bishops; that all objections as to change of possession are removed, and that the claims are not entirely

paid, to secure which the conveyances were made. Still, as against the creditors of the Bishops, their claim is only co-extensive with the amount of their debts or liabilities. And it is in their power at any time to surrender such security, and at the request of the Bishops or other persons to convey, transfer, and discharge the property from any claim they may have thereon for that purpose. And this, we think, is the effect of their deed to Brown and Houghton. In looking at that deed, it will be seen that Bailey and Amidon in connection with the Bishops, for the expressed consideration of $3,000, have executed an absolute release and conveyance by quit-claim, not only of the land, but also of the machinery specifically enumerated, to Brown and Houghton, to be held for their own use forever, free from any right, demand or claim which they may have to the same. If it had been their desire and intention to have released and discharged their lien or claim entirely upon this property, it would be difficult to draw an instrument better adapted for that purpose.

After the execution and delivery of that deed, if the property has been attached or taken away, evidently Bailey and Amidon could not have prosecuted therefor, for the simple reason that they had no interest in the property; they had transferred it to others, and would be estopped by their deed from setting up any claim to this property, against its express provisions. 12 John. Rep. 362. *Springstein* v. *Schermerhorn*. Com. Litt. 352 a. 1 Stark. Evid. 302.

And certainly if they have no interest in or title to the property, that would enable them to sustain an action under those circumstances, they have no such interest or title, the proof of which will make a defense to this action.

In relation to the deed of Bailey and Amidon and the Bishops to Brown and Houghton, it is to be observed, that Brown and Houghton paid nothing as a consideration. And the case states that the property was put into their hands for the sole benefit and use of the Bishops, to enable them to work up their old stock, and such as might be put in by Brown and pay off the debts, upon which the stock had been previously attached. Under this arrangement the Bishops worked up their stock, paid off those debts, and the whole object was accomplished for which the property was conveyed to Brown and Houghton.

After this, evidently, Brown and Houghton had no title to this property that should prevail against the right of the Bishops as general owners, or their attaching creditors—for having paid nothing they could not claim as purchasers—as trustees, or as having a special interest, they could claim nothing, as the whole object of the conveyance to them had been answered, and it appears they so considered it, for it is stated in the exceptions, that from the time of the payment of those claims in 1839 and '40, both Brown and Houghton "ceased to have any further control "or direction of the factory or machinery, but left the whole to the "care and custody of the Bishops." Under these circumstances, the property was attached by this creditor as the property of the Bishops.

Brown and Houghton have no reason to complain, and we do not understand, that it is claimed, that they have a title that should prevail against this attachment. And there can be no propriety in Bailey and Amidon setting up a title under their deed against this attachment contrary to its positive and unqualified provisions.

But it is insisted, that after Brown and Houghton ceased to have a claim to this property under their deed, they stood in the relation of trustees to Bailey and Amidon, and that it was their duty to have returned or reconveyed the property to them, to be held under their original deeds, as security for the payment of the balance of their claims against the Bishops, and that this property became so reinvested by operation of law. On this part of the case, the defense seems to be narrowed down to that *single inquiry.*

The exceptions which have been allowed in the case do not state any such *express agreement* to have been made between Bailey and Amidon and Brown and Houghton, not even a parol understanding to that effect is found to exist in the case. And if so important a circumstance existed, it should have been affirmatively found and stated. But on the contrary the deed would seem to forbid the existence of any such agreement, for instead of its containing any provisions or reservations of that character, it is an absolute transfer of all their right and title to this property to Brown and Houghton. Had this deed contained any provisions of that character, if any expressions had been used or contract

stated showing that to have been the intention of the parties, the question would be very different from what it now is. Without some circumstances showing that such relation was intended by the parties, or some contract made, it cannot be so considered, for the law will not create that relation, or impose such duty by implication against the express provisions of the deed, and particularly against the right of attaching creditors. 2 Story Eq. 1195. 6 Conn. Rep. 287, *Dean* v. *Dean.* 6 Barb. Rep. 482, *Watson* v. *Le Rou.*

It is rather to be implied and presumed, that Bailey and Amidon having in reality but a special interest in the property, intended to discharge and release that interest for the benefit of the Bishops, the general owners of the property, and that when the trust was discharged for which it was conveyed by them to Brown and Houghton, the property was to be held and placed (as it was in part) under the control and use of the Bishops, in the exercise of their powers as general owners. And when the property is attached by this creditor under such circumstances, it is not only a matter of law but of equity, that those persons who had but a special interest at most in the property should be estopped by their deed from setting up that interest, which by an instrument so formal and solemnly executed, they have released and discharged.

On this part of the case, therefore, we think the verdict was correctly rendered. And though on the trial the court may have charged the jury on other questions, some of which may be considered doubtful, or even if there was error, yet if from the whole case it clearly appears, that on another trial a similar verdict must inevitably be rendered, a new trial will not be granted. 1 Aik. Rep. 43. Bray. Rep. 168-9. 17 Vt. Rep. 499. 19 Vt. Rep. 210.

A further inquiry remains, whether the claim against the town is discharged by an agreement of the plaintiff in relation to the manner in which payment was to be made for the property sold. We learn from the case that previous to the sale there was an arrangement made between Dennison & Gore, Joel and Jonathan Houghton, and the plaintiff, that Dennison & Gore through Joel Houghton were to become the purchasers of this property at the sale, and were to pay Jona. Houghton, and that Jona. Houghton

XXIV. 18

was to pay the plaintiff the amount by applying it on claims he had against him.  On the day of sale, however, the plaintiff and his attorney were present, *and the constable was then directed to sell the machinery according to the statute and for cash.*  In these directions the duty of the officer was distinctly pointed out.  He had no authority to sell on credit or for anything but money. With the former conversation or arrangement between the parties, he had nothing to do.  The sale was made under these instructions, and when completed, the officer, and on his neglect the town, was responsible to the plaintiff for the amount of the sale.

But after the sale and purchase by Houghton for Dennison & Gore, it appears that Houghton informed the plaintiff, that if he had rather have the money than have it applied as previously arranged, it would be got for him.  That the plaintiff replied that he was willing to have it applied in that way, and consented to have it postponed until Gore should come to Readsboro.  If the town is absolved from their liability for the officer, it must arise from this subsequent arrangement, and the propriety of the verdict must depend upon the finding of the jury, as to the understanding of the parties in that *arrangement and postponement,* and the charge of the court in relation to it.  It is to be borne in mind, that as soon as the sale was made, the liability of the officer was fixed, and on his neglect the liability of the town.  And whether the plaintiff by any act has discharged that liability was the question which the court were called upon to instruct the jury, and which now arises on this bill of exceptions.  The court charged the jury, that if the plaintiff after the sale was offered payment of his execution and refused to receive it, or agreed that the officer might give credit to the purchaser for any length of time, the town would not be liable.  These questions of fact were properly submitted to the jury, and if true the verdict should have been for the defendant.  The jury in returning a verdict for the plaintiff have found that no such facts existed, that the plaintiff was never offered the money and refused it, and that he never agreed that the officer might give credit to the purchaser.

It was a mere consent to delay enforcing his claim against the officer or the town, leaving the matter with the officer to enforce payment of the execution, by that arrangement or otherwise, at his own discretion.  This was the understanding of the parties in that arrangement as found by the jury, and with which we have no

right to interfere, and it cannot but impress the mind with the conviction, that it is the only view of the subject in any way consistent with the positive instructions given at the sale.

The court further instructed the jury, that if the plaintiff agreed with the officer; that he would look to the Houghtons or any other person for payment, and would not rely upon the officer for it, or if the officer was induced by the acts or directions of the plaintiff to delay or omit the execution of the process, the town would not be liable. The verdict of the jury should have been for the defendant, if those facts were true. But the verdict being for the plaintiff the jury have found that no agreement was ever made to look to any other person but, the officer for payment, and that the officer was not induced to delay or omit the execution of the process by any act or declaration of the plaintiff. This finding of the jury must be conclusive in this case upon those facts, and it is not for this court to presume that the jury have neglected to conform to the instructions given, or misapprehended their legal effect. It is only to the facts as found by the jury, and the instructions given by the court, that our attention can be directed.

The substance of that whole arrangement as found by the jury, and as stated in the case, is simply this; that the plaintiff so far as he was concerned, consented to let his claim lie as it was, having for his security the liability of the officer and the town, until Gore should come to Readsboro and perfect that arrangement, leaving the matter with the officer to act upon his own discretion whether to delay enforcing the payment of the execution before that period or not. This consent was nothing more than a suspension of his legal right to enforce immediate payment by the officer or the town. This is the finding of the jury as to the understanding of the parties in that arrangement. The instructions of the court upon that subject are unexceptionable. That the plaintiff was not obliged to insist on immediate payment of the execution, and that having directed the property to be sold for money before the sale, it was the duty of the officer so to do, and if the officer sold otherwise and on credit the town was responsible. The jury have found by their verdict that no credit was given by the plaintiff but that the delay was granted solely upon the responsibility of the officer.

The result is that the judgment of the county court must be affirmed.