Elliott *et al. v.* Pontius *et al.*

No. 15,499.

## Elliott et al. *v.* Pontius et al.

PARTNERSHIP.—*Chattel Mortgage on Partnership Property.—When not in Fraud of Creditors.—Township Trustee.—Partnership Debt.—Individual Debt of Partner.*—It is true that for many purposes money received by a township trustee on account of his township is his own money; and when he repays it to the township he is paying his individual debt. But where the trustee used money belonging to the township funds, for partnership purposes, and the partners, finding that the firm was liable to fail, borrowed money enough to repay the township, giving their note therefor with the trustee's bondsmen as sureties thereon, and, to secure these sureties, the partners executed a chattel mortgage on partnership property, the debt of the partnership, for the money used by it and belonging to the township funds, was a debt owing to the township and not to the trustee individually, and the mortgage is not void as against existing creditors of the partnership.

SPECIAL FINDING.—*Failure to Include Facts in Issue and Established by Undisputed Evidence.—Correct Conclusions of Law.—Harmless Error. —Reversal.—New Trial.*—Where the court fails to include in its special finding of facts matters put in issue by the pleading and established by uncontradicted evidence, such failure is error, but it is rendered harmless where, notwithstanding such omission, the law is correctly stated and a correct result reached. In such case, the judgment will not be reversed and a new trial ordered.

ACTION.—*Misjoinder of Causes.—Action by Creditors to Set Aside a Fraudulent Mortgage on Debtor's Property.—Former Adjudication.*— Creditors may join in a common complaint against a common creditor, though the debts are several and separate, where the complaint seeks to set aside a fraudulent mortgage on the debtor's property; and when the element of fraud fails to be sustained, then the right of recovery in a common suit is gone, and each must recover on his separate debt, in a separate action; for as soon as the element of fraud failed to be established, there was a misjoinder of causes of action. In such case the failure of the joint action will not operate as a bar to a future recovery on the separate debts, in separate actions.

From the Miami Circuit Court.

*L. Walker* and *W. B. McClintic,* for appellants.

*W. C. Bailey* and *J. T. Cox,* for appellees.

McCABE, J.—Appellants brought suit in the court below, against appellees, to set aside a conveyance of real estate and a chattel mortgage on a stock of goods, on the ground that the deed and mortgage were fraudulent as against appellants and others, as the creditors of the appellees Rufus Pontius and James O. McElwee, partners, doing business under the firm name of Pontius & McElwee.

Trial by the court, special finding of facts, and conclusions of law thereon upon which the court rendered judgment for the appellees, defendants below.

It is assigned for error here:    1. That the court erred in overruling the demurrer by plaintiff to the second paragraph of answer.    2. That the court erred in overruling the motion for a *venire de novo.*    3. That the court erred in overruling the motion for a new trial.

The special finding makes the first assignment of error unavailable, and, in addition to that, appellants have waived that and the second assignment by not discussing them in their brief.

Three months after the submission of the cause here appellants, as appears by the clerk's indorsement on the record, made, by agreement, an additional and fourth assignment of error, by which the conclusions of law are called in question.

The appellees Rufus Pontius and Jacob O. McElwee, partners, in the mercantile business at Denver, Indiana, under the firm name of Pontius & McElwee, were, at the time of making the mortgage and conveyance complained of, not possessed of, and said firm did not own, property and assets enough to equal in value the amount of the firm's indebtedness to the appellants and others. Pontius was at the time trustee of Jefferson township, Miami county, Indiana, and his co-appellees, Speck, Hoff,

Fisher, and Thomas S. McElwee, were sureties on his official bond.

Pontius and McElwee conveyed to Thomas S. McElwee certain real estate in Denver, Indiana, belonging to the firm, and the transfer was made in contemplation of insolvency and while intending an assignment for the benefit of their creditors.

Pontius had let the firm have and use in its business about $1,600 of the township funds. For the purpose of repaying the debt due the township, Pontius & McElwee, on March 5, 1889, borrowed of the First National Bank of Peru $1,600 on 180 days' time, and gave their note for the same, with Speck, Hoff, Thomas S. McElwee, and Fisher as sureties, they also being sureties on the official bond of Pontius; and to secure the sureties on the note, Pontius & McElwee executed to them a chattel mortgage on their stock of goods and merchandise. The sureties knew the purpose of the loan, and the money thus borrowed was used in repaying the township funds to the successor of Pontius in the office of township trustee.

On March 8, 1889, Pontius & McElwee made an assignment for the benefit of their creditors to the other appellee, William O. Piper.

The object of the suit was to set aside the conveyance and mortgage above mentioned, as a fraud on the creditors of Pontius & McElwee, and obtain a decree directing the assignee to sell the property for the benefit of the creditors regardless of said mortgage and conveyance.

The conclusions of law are to the effect that the debt of $1,600, for the payment of which that sum was borrowed from the bank, was the debt of the firm to the township. There is no question made as to the conveyance of the real estate, because the court found as a fact, that Thomas S. McElwee, the grantee in the conveyance, was

a *bona fide* creditor of the firm, and that the value of the property conveyed to him was less than his said claim against the firm.

The only question, therefore, for our consideration and decision is the correctness of the conclusions of law.

It is maintained with great earnestness and ability, that, under the facts found, the debt for the payment of which the $1,600 was borrowed was the individual debt of Pontius to the township, and that the insolvent firm had no right, as against the creditors of the firm, to apply the assets of the firm in direct payment thereof, or to secure the payment of the same by mortgaging the assets of the firm, either directly or indirectly. If the debt for the payment of which the money was borrowed was the debt of the firm, it is conceded that the insolvent firm had the legal right to prefer that debt by either paying or securing it, though that would defeat all the other creditors. But it is strenuously insisted that the debt was not the debt of the firm, but was the individual debt of Pontius, and that therefore it was a fraud upon the creditors to apply the assets of the insolvent firm, either in direct payment of, or security for, the individual debts and liabilities of a member of the firm so as to defeat the creditors of the partnership. It is not denied that the firm used the money of the township in its partnership business, and the finding shows that it was all used in the payment of the debts of the partnership, and some of the very creditors now complaining were recipients of that money in the partial payment of their claims.

But it is sought to work out the problem of forcing the sureties on the official bond of Pontius to let go their collateral security, by applying that line of decisions of this court which hold that the money of a township, when it passes into the hands of the trustee, ceases to be

the money of the township, and becomes the property of, and belongs to, the trustee. That being so, it is claimed that when Pontius lent the money which he had received on account of the township to the firm of which he was a member, or used the money for the benefit of the firm in its business, it was his individual money, and his firm simply became indebted to him to repay the money, and not to the township; and he was, and is, the debtor of the township. Therefore, when the sureties on his official bond became sureties on the note to the bank, signed by himself and partner, for borrowed money to pay the township, for the township funds used by the firm, it is insisted that this was only borrowing money to pay his individual debt to the township, and not the firm's debt to the township. Therefore, it is insisted that the chattel mortgage executed to indemnify such sureties against loss on account of their liability to pay such borrowed money, it is in effect the same as if the mortgage on the stock of goods had been made to secure the debt of Pontius to the township.

If the law will allow these creditors of this insolvent firm to appropriate the $1,600 of the township funds, as they have, to their benefit, and then stand with sword in hand to prevent the sureties on the official bond from taking any step to secure themselves out of the poor pittance of property left, only because the township funds had gone to these creditors instead of the old shelf worn and unsalable goods, then sureties meet with no favor in the eyes of the law. But, we think, the law is subject to no such reproach. It is true that, for many purposes, the money received by a township trustee on account of his township is his own money. And when he repays it to the township, he is paying his individual debt.

"But," said this court in *Rowley, Admr.*, v. *Fair*, 104 Ind. 189 (193), "The title of a township trustee in the

money for which he is held responsible is only recognized to the extent that is necessary for the better preservation of the various funds which the money represents, and is, in fact, a legal title only in a technical and very limited sense. The equitable title to, and the beneficiary interest in, such money is in the township, and in that view the money for which the trustee is liable upon his bond really belongs to the township. In that sense, section 5993, R. S. 1881, refers to all moneys coming into the hands of a township trustee, as belonging to the township.''

Here the firm, finding that they were liable to fail, did a commendable thing by providing for the repayment of the debt to the township, and they treated the debt to the township as the debt of the firm, which it was in equity. Instead of being a fraudulent act on their part to so treat it, they manifested good faith and honesty in doing so.

But if we even treat the title to the township money in the township trustee's hands as vesting in him individually, and the debt to the township in this case as the individual debt of Pontius, yet the incumbering of the partnership property to secure its payment was not such a fraud on the creditors of the insolvent firm as entitled them to set aside such incumbrance.

In *Fisher* v. *Syfers*, 109 Ind. 514 (516), Judge MITCH-ELL, speaking for the court, said: ''The rule that obtains in the distribution of estates of partners, and under which partnership creditors are entitled to priority of payment out of the partnership assets, is an equitable doctrine for the benefit and protection of the partners respectively. 'Partnership creditors have no lien upon partnership property; their right to priority of payment out of the firm assets, over the individual creditors, is always worked

out through the liens of the partners.' *Warren* v. *Farmer*, 100 Ind. 593; *Trentman* v. *Swartzell*, 85 Ind. 443.

"Upon the death of one partner, or where the firm becomes bankrupt, or where the partnership assets are being administered by a court, the rule of equitable distribution is applicable to its fullest extent. Where, however, the partners have the possession and control of their own property, they have the right to make any honest disposition of it they see fit; each has the right to waive his equitable lien, and together they may sell, assign or mortgage the property of the firm, to pay or secure either an individual debt of one of the partners, or the debts of the firm. Where debts are fairly owing by either partner individually, the mere preference of individual over partnership creditors by the execution of a chattel mortgage, in the firm name, or by authority of the partners, upon the property of the firm, is not of itself such a fraud upon the partnership creditors as will authorize the setting aside of the chattel mortgage at the suit of a creditor." Citing *Nat'l Bank, etc.,* v. *Sprague,* 20 N. J. Eq. 13; *Kirby* v. *Schoonmaker,* 3 Barb. Ch. 46; *Kennedy* v. *Nat'l Union Bank,* 23 Hun, 494; *In re Kahley,* 2 Biss. 383; Jones' Chat. Mort., section 44.

*Fisher* v. *Syfers, supra,* was cited, and the principles just quoted therefrom were reaffirmed in *Goudy* v. *Werbe,* 117 Ind. 154; and in *Winslow* v. *Wallace, Rec.,* 116 Ind. 317.

We are, therefore, of opinion that the court did not err in its conclusions of law. It is very earnestly contended that the finding is contrary to the law and the evidence, and hence that the court below erred in refusing a new trial for that reason.

The complaint is that the evidence, without any conflict, establishes the indebtedness of the firm to the vari-

ous creditors in various amounts, but that the special finding is utterly silent on that subject.

It is insisted that said indebtedness having been put in issue by the pleadings, and the appellants having the burden of that issue, the silence of the special finding, on such issue, is equivalent to a finding that no such indebtedness existed. This is true; and the court erred in failing to find on that issue what the evidence plainly established without any conflict whatever. But the error was harmless. The finding and conclusions of law proceed upon the assumption that such indebtedness, being admitted by the partners in their testimony, is not a disputed fact in the case. But the testimony can not be looked to in aid of a special finding, however undisputed it may be. The issues joined put the matter in dispute, and the finding must respond to that issue just as much as if the evidence also put the matter in dispute. Assuming that the indebtedness of the firm to the appellants, as creditors, was conceded and undisputed, the court stated the conclusions of law correctly arising upon the facts thus assumed to be true.

The law being correctly stated, there could be no recovery by appellants, even though the facts as to the matter of indebtedness had been fully and correctly found.

A correct result having been reached, as much so as if the error had not occurred, it follows that the error was a harmless one.

The judgment is affirmed.

Filed Nov. 28, 1893.

### On Petition for a Rehearing.

McCabe, J.—Appellants present a single ground on which they ask a rehearing, or, rather, a modification of the opinion and mandate. They insist that there ought

Elliott *et al. v.* Pontius *et al.*

to be a reversal, because the evidence clearly proved, without conflict, that the appellees were indebted to the appellants in the several sums stated in the complaint, and to that extent they ask a reversal, so as to allow them to recover their several claims against appellants. And that, of course, must be by several and separate judgments in favor of the appellants, against the appellees.

The complaint was in the nature of a creditor's bill. Numerous creditors of the firm of Pontius & McElwee brought the action against that firm and others, mortgagees, grantees and the assignee to whom the firm had transferred their firm property for the benefit of their creditors. The object of the suit was to set aside the mortgage and the conveyance as a fraud on the creditors and get an order of the court that the assignee should take possession and control of the fraudulently conveyed and mortgaged property as a part of the assets of the insolvent firm.

The complaint did not proceed upon the theory of an ordinary creditor's bill; it did not proceed upon the theory of an ordinary suit by creditors to recover a judgment against their debtor and to subject certain property fraudulently conveyed and mortgaged, freed from such conveyance and mortgage, to sale to satisfy such judgments; but it proceeded upon the theory of avoiding the conveyance and mortgage as a fraud on the creditors, and securing an order on the assignee by the court that he take charge and make sale of said property for the benefit of creditors.

Consistently with this theory, there was no prayer in the complaint for judgment in favor of the complaining creditors for their debts against their debtors, either severally or collectively. It is true the want of a specific prayer for judgment would not preclude the granting of

such relief, especially where, as here, there was a prayer for all proper relief. But we mention the absence of such specific prayer as pointing to the probable theory on which the pleader intended to proceed in the complaint. In such a case, it has been held by this court, we think properly, that the prayer may be looked to in determining such theory. *Monnett* v. *Turpie*, 133 Ind. 424.

But even if the complaint should be treated as proceeding upon the theory of an ordinary suit by creditors to obtain judgments for their several and separate debts and claims, and in the one and same complaint to set aside a fraudulent conveyance and a fraudulent mortgage, we must bear in mind that it was that part of the complaint that assailed the conveyance and mortgage as a fraud on creditors that gave the several creditors a standing in court as joint plaintiffs. Their debts being several and separate, they had no right to join in one common complaint to recover nothing more than a judgment, be that judgment joint or a separate judgment for each debt separately.

In *Field* v. *Holzman*, 93 Ind. 205, it was said: ''The appellants are members of many different mercantile firms having claims against George Holzman for goods sold him, and all united in one complaint against the appellees. * * * They had a right to have their debtor's property subjected to the payment of their claims, and they were entitled to joint relief against the fraud sought to be perpetrated by the removal of their debtor's property. The claims of the appellants are, it is true, separate, but their right to relief against the fraudulent scheme to keep from them their debtor's property is joint. They were, therefore, jointly interested in the relief demanded, and this entitled them to unite as plaintiffs. R. S. 1881, section 262; *Ruffing* v. *Tilton*, 12 Ind.

Elliott *et al. v.* Pontius *et al.*

259; Pomeroy's Rem., sections 266, 267, 268; 1 Dan. Ch. 235.''

The statute, however, provides that * * ''causes of action so joined must affect all the parties to the action,'' etc. 1 Burns' Rev. 1894, section 279, subd. 7; 1 Burns' Rev. 1894, section 281; *Bowen* v. *State, ex rel.*, 121 Ind. 235.

The finding of the trial court was that that part of the complaint that gave the appellants a standing in court as joint plaintiffs, by which we mean the right to join their several separate debts as a cause of action in one complaint, was found to be untrue; that is, the court found that there was no fraudulent conveyance and no fraudulent mortgage; that is, the finding of facts and conclusions of law, together, establish that proposition.

The petition for a rehearing does not question the correctness of this conclusion; but contends that the finding of the court below ought to have followed the evidence, which established, without any conflict, the several debts due the several plaintiffs joining in the complaint.

We held in the original opinion, that the court ought to have done so, and that it was error not to do so, but that it was a harmless error. It ought to have done so, because it was a part of the facts alleged in the complaint. But it was harmless, because the conclusions of law made it impossible to obtain the relief sought in the complaint in setting aside the conveyance and mortgage. But appellants contend that such failure harmed them, because it is tantamount to a finding that their debts did not exist, and makes a bar to a recovery of them in the future.

That is a mistake. The conclusion reached in the original opinion, and of which they do not complain, eliminates entirely from their complaint, should the case

be reversed and taken back, the feature seeking to set aside the alleged fraudulent conveyance and mortgage, and would leave them with nothing but their joint complaint seeking to recover on separate and several causes of action in favor of different and several parties, in which no two of them have any interest whatever, being causes of action that do not "affect all the parties to the action," contrary to the statute already quoted.

It is true there was no demurrer for misjoinder of causes of action, for the good reason that there was no misjoinder so long as that part of the complaint seeking to avoid the alleged fraudulent conveyance and mortgage remained intact. But now, that part of the complaint being eliminated, there is a misjoinder. It is also true that a failure to demur for that ground is a waiver of such an error, and had there been such a demurrer for such misjoinder, even though well taken, the statute forbids a reversal for such error; yet, in this case, the appellees have had no opportunity to file such a demurrer, because the appellants joined other matters with their complaint that have proven untrue, that made the complaint good against an attack by such a demurrer.

In *Martin* v. *Davis*, 82 Ind. 38, it was held that "To entitle two or more persons to join as plaintiffs, it is not sufficient that they each have a cause of action, arising out of the same transaction or matter, if the relief sought by each be distinct and unconnected. The plaintiffs must have a common interest in the subject of the action, and in the relief. Each must be interested in the relief sought by the other."

For this defect the complaint was held bad on demurrer.

To the same effect are *Tate* v. *Ohio, etc., R. R. Co.*, 10 Ind. 174; *Goodnight* v. *Goar*, 30 Ind. 418; *Lipperd* v.

*Edwards,* 39 Ind. 165; Bliss Code Pl., section 76; Moak's Van Santvoord's Pl., 68.

It has often been held by this court, that a complaint that does not state a good cause of action as to all, though it does as to some of the plaintiffs, is bad as to all. *Berkshire* v. *Shultz,* 25 Ind. 523; *Davenport* v. *McCole,* 28 Ind. 495; *Goodnight* v. *Goar, supra; Debolt* v. *Carter,* 31 Ind. 355; *Fatman* v. *Leet,* 41 Ind. 133; *Neal* v. *State, ex rel.,* 49 Ind. 51; *Lipperd* v. *Edwards, supra; Maple* v. *Beach,* 43 Ind. 51; *Brumfield* v. *Drook,* 101 Ind. 190; *Brown, Exec.,* v. *Critchell,* 110 Ind. 31; *Sedwick* v. *Ritter,* 128 Ind. 209; *Mississinewa, etc., Co.* v. *Patton,* 129 Ind. 472.

So it has been held by this court, that where a complaint is filed in the names of several plaintiffs, and it does not state a joint cause of action in favor of all, it will be bad on motion in arrest of judgment. *Harris* v. *Harris,* 61 Ind. 117.

So, if we were to reverse the judgment of the trial court for the error of failing to find the existence of the several separate debts proven by the evidence in favor of the several appellants, and instruct the court below to grant the motion for a new trial on account of such error; and on such new trial the evidence having established such several debts again, and the finding should be for the appellants accordingly, the trial court would be bound to arrest the judgment because of the incurable insufficiency of the complaint; and if the trial court did not do so, this court would be compelled to reverse any judgment that should be recovered on such a complaint.

If justice has been done by the verdict or finding, and the appellate tribunal can see that a new trial ought to produce the same result, a new trial will not be ordered. 16 Am. and Eng. Encyc. of Law, 508; *Arrington* v. *Cherry,* 10 Ga. 429; *Sheldon* v. *School District,* 24 Conn.

88; *Boyd* v. *State*, 17 Ga. 194; *Duckett* v. *Crider*, 11 B. Mon. (Ky.) 188; *Noyes* v. *Shepherd*, 30 Me. 173; *Brantley* v. *Carter*, 26 Miss. 282; *Hanna* v. *Renfro*, 32 Miss. 125; *Welborn* v. *Spears*, 32 Miss. 138; *Welch* v. *Butler*, 24 Ga. 445; *Brown* v. *Bowen*, 30 N. Y. 519; *Walworth* v. *Readsboro*, 24 Vt. 252; *Martin* v. *Hill*, 3 Utah, 157; *Board, etc.*, v. *People*, 47 Ill. App. 49; *Hewitt* v. *Jones*, 72 Ill. 218.

The petition for a rehearing is, therefore, overruled.

