10   491
89   562

10   491
140  621

## RANDALL v. BUFFINGTON AND WIFE.

There is no rule of law which prevents a debtor, in insolvent circumstances, from the application of his property to the payment of one debt rather than another.

Where the defendant was indebted in the sum of $1000, which he secured by a mortgage on his homestead, and some time afterwards became insolvent, and after several attachments had been issued in suits against him, and levied on his store, he took money which he had and paid off the debt secured by the mortgage: *Held*, that the payment was not an act to hinder, delay, and defraud his creditors.

The removal of the lien from the homestead was but the consequence of an act lawful in itself.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

The complaint alleges that on the thirteenth day of February, 1857, the defendants executed to George E. Drew a mortgage on their homestead, to secure the payment of a promissory note of $1000, payable in six months after date, with interest at the rate of two and one-half per cent. a month; that on the seventeenth of October, 1857, and for eighteen months previous, the defendant J. M. Buffington was doing business as a grocer, and on and before this last day he was insolvent, and on that day he was owing $15,000; that his available estate to pay his debts did not then amount to but $3566 23; that on that day attachments were issued in suits against him amounting in the aggregate to $11,340 69; that the suits went to judgment; that on that day, October 17, 1857, and after several of the attachments had been levied on his store, he took the money he had by him made in

his business, and paid off the note to Drew, with the interest thereon, and thus discharged the mortgage; and that this was done by him to hinder, delay, and defraud his creditors; that the whole property attached was exhausted by the first two attachments; and that the plaintiff, who had commenced suit against the said defendant, and issued an attachment, finding that he could get nothing from the personal estate, had levied his attachment on the homestead; that he had since recovered judgment for $1187 48; that the defendants claimed the property as their homestead, and that the same is not worth $5000; and concludes with a prayer that the premises may be sold to satisfy his judgment, and for other relief, ec.

The defendant J. M. Buffington, in his answer admits the execution of the mortgage and its payment, but denies that he was insolvent on the seventeenth of October, 1857; or that he paid off the mortgage with money made in his business; or with intent to hinder, delay, and defraud his creditors.

The case was heard on the complaint and answer, and the record of the proceedings and judgments in the several attachment-suits commenced against the said defendant.

The Court below rendered judgment for the defendants, and dismissed the complaint, and the plaintiff appealed.

*Baine and Bouldin* for Appellant.

1. A man must be just before he is generous; and " it must be a fundamental policy of all enlightened nations to protect and subserve the rights of creditors." Story's Equity, §§ 349, 350, 351, 353, 355, 357, 359. If these principles are to be enforced by this Court, Buffington's disposition to himself and wife can not stand.

2. The disposition, arrangement, or investment, for the benefit of himself and wife being voluntary, can not, for a moment, be considered valid against the rights of a creditor. 1 American Equity Digest, 568, (8;) Ib., 568, (10;) Ib.,569, (13;) Ib.,574, (56;) 4 S. & M. R., 310.

3. The purpose sought by this bill is but the application of a familiar rule of equity, namely, that personalty shall be considered realty, and realty personalty, as the circumstances of justice may require; and that other familiar rule of equity, to wit, the doctrine of substitution, where a lien on realty has been discharged out of personalty. Story's Equity, §§ 1212–1215; 3 Wheaton R., 577; Fonblanque's Equity, chapter 6, § 9, and note; Story's Equity, §§ 562, 564; 1 Maddock Chancery, 618; 8 Vesey R., 386. The case in Vesey is especially commended to the consideration of the Court. The arguments of Mr. Piggot and Mr. Fonblanque in that case, against the application of the principle of substitution, are much superior to anything heard or

seen in this case. And the case is perfect in its analogy to this in every particular.

4. Again, equity will pursue converted property into whatever form it may assume, and apply it to the purposes of justice, and according to the nature of the case. Story's Equity, §§ 1259–1260; 1 Johns. Ch. R., 128; Ib., 582; 2 Ib., 441.

5. The investment and disposition by Buffington is a fraud. See 5 Cal., 488. And it is not necessary to show the privity of his wife. 2 Paige, 59; 1 American Equity Digest, 575, (71;) Ib., 577, (85, 86, 87;) 2 Johns. Ch. R., 512. The principle settled in Riddell v. Shirley, 5 Cal., 488, is, that " a sale with the direct intent of benefit or advantage to the seller, to the injury of the creditor," is fraudulent. This is the doctrine of every case where the fraud is actual or constructive.

6. The intent of the parties is to be ascertained by "the language of the facts," and not by the denial of evil intent in the answer. 2 Johns. Ch. R., 300; Freeman's Ch. R., 437; 4 Johns. R., 596; 3 Paige R., 557–564; 1 American Equity Digest, 563, (34.)

We think these points and authorities conclusively establish the plaintiff's right to relief.

*S. Heydenfeldt* for Respondent.

1. It is not unlawful for a party in insolvent circumstances to apply his property to the payment of one debt rather than another. Dana v. Stanford, 10 Cal., 269, and cases there cited.

2. The fact that the homestead was released from the lien of the mortgage by the payment to Drew makes no difference in the transaction. Such release was a consequence of an act lawful in itself. The case of Riddell v. Shirley, 5 Cal., 488, is unlike this; the decision in that case expressly excepts a case similar to the present one. To make this case at all like Riddell v. Shirley, the plaintiff ought to sue Drew to get the money back, which the defendant paid him, but the absurdity of such a proceeding is too apparent to need any comment.

FIELD, J., delivered the opinion of the Court—BALDWIN, J., concurring.

It appears, from the record, that in February, 1857, the defendant, J. M. Buffington, was in business as a grocer; that whilst so in business, he became indebted to Drew in the sum of a thousand dollars, which he secured by a mortgage on his homestead; that on the thirteenth of October following, attachments for sums, amounting in the aggregate to over eleven thousand dollars, were issued in suits against him; that, after several of these attachments had been levied on his store, he took the money which he had and paid off the debt to Drew, which was then past due, and thus satisfied the mortgage.

The complaint alleges that the defendant was insolvent at the time, and that the payment was made to hinder, delay, and defraud his creditors; that the several suits went to judgment, and upon them only the sum of three thousand five hundred and sixty-six dollars was ever collected; that the plaintiff has levied upon the homestead, which is not worth five thousand dollars, and concludes with a prayer that the premises may be sold for the satisfaction of his judgment.

The answer of the defendant denies his insolvency at the time of the payment to Drew, and all intent to hinder, delay, and defraud his creditors. We place very little weight on this last denial. The intent of the party must be gathered from the transaction. The language of the facts will be regarded, rather than the assertion of the party. If such intent existed, it must be inferred from the acts of the defendant. (Hendricks *v.* Robinson, 2 John. Ch., 301.)

Nor do we place much weight upon the allegations as to the insolvency of the defendant. The only proof offered on this point was the record of the proceedings and judgments in the several suits against the defendant. This was not conclusive; but, for the disposition of this case, we shall assume the fact that his insolvency was established, and upon this assumption, it is difficult to perceive how the payment of a debt which he justly owed, and which was past due, can be tortured into an act to hinder, delay, and defraud creditors. The debt was as sacred as any other debt; the obligation to pay it as binding, and even if its payment constituted a preference, there is no rule of law which prevents a debtor, in insolvent circumstances, from the application of his property to the payment of one debt rather than another. (Dana *v.* Stanfords et al., 10 Cal., 269; Nicholson *v.* Leavitt, 4 Sand., 252; Covanhovan *v.* Hart, 21 Penn., 495; Worland *v.* Kimberlin, 6 B. Monroe, 608; Kinnard *v.* Adams, 11 B. Monroe, 102.)

But it is urged, with apparent confidence in the conclusive character of the position, that the payment resulted to the benefit of the defendant, as it relieved his homestead of the incumbrance, and consequently of liability of being sold for its satisfaction. We confess our inability to see what difference this can make in the transaction. The obligation to pay the debt was none the less binding because it was secured by a mortgage, and if a lien was removed from the homestead, it was but the consequence of an act lawful in itself. The payment conferred upon the debtor no new right. He owned the homestead, free from liability, before the debt to the plaintiff was contracted, and he simply restored its former exemption by paying a debt which he had incurred upon its security. The case of Riddell *v.* Shirley, (5 Cal., 488,) is a very different one from this. In that case, there was a fraudulent and conclusive sale of the debtor's

property to discharge liens upon his homestead; the vendee was not a creditor receiving payment of a debt; and no claim against the homestead was asserted. The opinion expressly excepts from its conclusion a case like the present. " To make this case," very justly observes the learned counsel of the respondent, in his brief, " at all like Riddell v. Shirley, the plaintiff ought to sue Drew to get the money back which the defendant paid him, but the absurdity of such a proceeding is too apparent to need any comment."

Judgment affirmed.