Filed Feb. 16, 1887.

---

No. 12,096.

## FISHER ET AL. *v.* SYFERS ET AL.

CHATTEL MORTGAGE.—*Partnership.*—*Fraud.*—*Debtor and Creditor.*—*Voluntary Assignment.*—A chattel mortgage given by a new firm to secure a *bona fide* indebtedness of the old partnership, or of an individual member of the latter, is not therefore fraudulent as against creditors of the new firm, nor does the fact that an assignment for the benefit of creditors is subsequently made, affect its validity.

SAME.—*Mortgage of Merchandise.*—*Renewals of Stock.*—A stipulation in a chattel mortgage covering a stock of merchandise, that additions and renewals of the stock shall be deemed to be covered by the mortgage, will not vest title thereto in the mortgagee unless followed by possession by the latter before the rights of others attach, but it does not render the mortgage invalid on its face.

SAME.—*Possession by Mortgagor*—*Power to Sell.*—A fraudulent intent can not be judicially inferred from the fact that the mortgagor, by the terms of the mortgage, may remain in possession, with leave to sell, even though he be not required by a stipulation in the mortgage to account for the proceeds of the sales.

SAME.—*Pleading.— Allegations of Fraud.* — A general averment of fraud, without more, is not sufficient to defeat a chattel mortgage. Whether it is fraudulent or not is a question of fact to be determined according to the circumstances of each case.

From the Parke Circuit Court.

*D. H. Maxwell, F. M. Howard* and *J. R. Courtney,* for appellants.

*S. D. Puett, H. E. Hadley, J. L. Griffiths* and *A. F. Potts,* for appellees.

MITCHELL, J.—Syfers, McBride & Co. brought this action against the appellants to set aside certain chattel mortgages, executed by Charles E. and Elizabeth A. Fisher, doing business under the name of Fisher Bros.

The complaint alleges that Fisher Bros. had become indebted to the plaintiffs for goods, wares and merchandise, sold to them by the plaintiffs, and that for the purpose of defrauding their creditors, the defendants Charles E. and Elizabeth A. Fisher executed certain mortgages, covering their stock, to Daniel D. Fisher and Margaret E. Fisher, who are alleged to be relatives of the mortgagors.

It is charged that the mortgage to Daniel D. Fisher was given to secure a note executed by one O. P. Fisher, formerly a member of the firm of Fisher Bros., and also to indemnify the mortgagee against liability on account of his having become surety for the old firm of Fisher Bros., on a note to the Rockville National Bank. It is also charged, that the mortgage executed to Margaret E. Fisher was given as a security for an individual debt due from Charles E. to Margaret E. Fisher. The complaint charges that none of the debts secured by the several mortgages were the debts of the new firm of Fisher Bros., which was, as before stated, composed of Charles E. and Elizabeth A., to which firm the plaintiffs gave credit, but that they were either the debts of the old firm of Fisher Bros., which was composed of Charles E. and O. P. Fisher, or the debts of the individual members of the old firm.

The complaint charges further, that since the execution of the several chattel mortgages complained of, the new firm has made an assignment for the benefit of its creditors; that the assignee is threatening to sell the partnership property and pay off the mortgages, in fraud of the rights of the cred-itors of the new firm.

The assignee and mortgagees were joined with the members of the new firm as parties defendants.

One of the errors assigned and presented by one of the appellants is, that the court erred in overruling the demurrer to the complaint.

The theory upon which the complaint, as well as the appellees' argument in support of it, proceeds is, that the chattel mortgages having been given by what is called the new firm of Fisher Bros., to secure in part the indebtedness of the old firm, and in part the debts of individual members of the old firm, such mortgages were in law fraudulent as respects the creditors of the new firm.

The appellants suggest that the complaint was held good below, upon the theory that the mortgages therein described were *per se* fraudulent, because of a recital contained in each, to the effect that the mortgagors might remain in possession of the goods mortgaged, and continue the business, without also requiring that the proceeds of sales be applied to the liquidation of the mortgage debt.

The complaint can not be maintained upon either of the theories suggested. The rule that obtains in the distribution of the estates of partners, and under which partnership creditors are entitled to priority of payment out of the partnership assets, is an equitable doctrine for the benefit and protection of the partners respectively. "Partnership creditors have no lien upon partnership property; their right to priority of payment out of the firm assets, over the individual creditors, is always worked out through the liens of the partners." *Warren* v. *Farmer,* 100 Ind. 593. *Trentman* v. *Swartzell,* 85 Ind. 443.

Upon the death of one partner, or where the firm becomes bankrupt, or where the partnership assets are being administered by a court, the rule of equitable distribution is applicable to its fullest extent. Where, however, the partners have the possession and control of their own property, they have the right to make any honest disposition of it they see fit; each has the right to waive his equitable lien, and together they may sell, assign or mortgage the property of the firm, to pay or secure either an individual debt of one of the partners, or the debts of the firm.

Where debts are fairly owing by either partner individually, the mere preference of individual over partnership creditors by the execution of a chattel mortgage, in the firm name, or by authority of the partners, upon the property of the firm, is not of itself such a fraud upon the partnership creditors as will authorize the setting aside of the chattel mortgage at the suit of a creditor. *National Bank, etc.,* v. *Sprague,* 20 N. J. Eq. 13; *Kirby* v. *Schoonmaker,* 3 Barb. Ch. 46; *Kennedy* v. *National Union Bank,* 23 Hun, 494; *In re Kahley,* 2 Biss. 383; Jones Chat. Mort., section 44.

Where a sale or pledge of partnership property is fraudulent in fact, so as to invoke the jurisdiction of the court on behalf of creditors to set it aside, the equitable rule of distribution will be applied. *Hardy* v. *Mitchell,* 67 Ind. 485.

It is not charged in the complaint, that the debts which the chattel mortgages were given to secure were not fairly owing to the mortgagees.

The mere fact that one of the mortgages was given to the father-in-law of one of the partners, and one to the wife of the other, is no impeachment of their validity. Nor do the general averments, that the mortgages were fraudulently given, with intent to hinder and delay the creditors of the mortgagors, count for anything, in the absence of the statement of any facts which go to impeach the consideration of the mortgages, or which raise an inference of fraud, admitting that the consideration was fair.

Partners, the same as others, may, by a sale or mortgage of the partnership property, give a preference to their creditors. If a sale or mortgage is made in good faith, to secure a *bona fide* debt or debts, the transaction can not be successfully assailed, on the ground that the creditors preferred are the individual creditors of the several partners. That the partners subsequently made an assignment of all their property for the benefit of all their creditors, does not affect the validity of the mortgages. *Grubbs* v. *Morris*, 103 Ind. 166, and cases cited; *Henderson* v. *Pierce*, 108 Ind. 462.

The mortgagees having acquired a right to the property by force of their chattel mortgages, their rights can not be displaced without showing actual fraud. *Louden* v. *Ball*, 93 Ind. 232.

The chattel mortgages, which are in the usual form, after describing the stock of goods, contain, among others, substantially the following stipulation: That the mortgagors should retain possession of the stock, and operate the business, keeping the stock replenished from time to time, so as to keep the quantity and variety substantially intact, with the view and purpose to aid in the payment and discharge of the notes secured. The after-acquired stock was to be considered as coming under the terms of the mortgages.

The stipulation that additions and renewals to the stock that might thereafter be made should be deemed to be covered by the mortgage was ineffectual, without more, to vest in the mortgagee a title to such after-acquired property. Such a stipulation followed by possession of the mortgagee, before the rights of others attach, has been held effectual to vest the latter with both a legal and equitable right to after-acquired property. Jones Chat. Mort., section 405.

The stipulation did not, however, render the mortgage invalid on its face. Nor does the right of the mortgagors to continue in possession with power to continue the business and dispose of the stock at retail, make the mortgages fraudulent *per se.*

Under the more recent decisions of this court, based upon a construction of section 4924, R. S. 1881, a fraudulent intent can not be judicially inferred from the fact that the mortgagor, by the terms of the mortgage, may remain in possession with leave to sell the property, even though he be not, by stipulation in the mortgage, required to account for the proceeds of such sales. Whether the mortgage was or was not actually fraudulent, is a question of fact to be determined according to the circumstances of each particular case. *McFadden* v. *Fritz,* 90 Ind. 590, and cases cited; *Dessar* v. *Field,* 99 Ind. 548; Jones Chat. Mort., section 387.

For the error in overruling the demurrer to the complaint the judgment is reversed, with costs.

