Goudy v. Werbe et al.

Filed Jan. 29, 1889.

---

No. 12,347.

## GOUDY v. WERBE ET AL.

PARTNERSHIP.—*Sale by One Partner to Another.—Agreement to Pay Firm Debts.*—A sale by one partner to another of his interest in the firm property, the purchasing partner agreeing in consideration of the transfer to pay the firm debts, vests title in the latter, in the absence of fraud, and he becomes individually liable to the partnership creditors.

EXEMPTION FROM EXECUTION.—*Partnership Property.—Severance of Interest.* —A partner is not entitled to claim firm property as exempt from execution, but if a severance takes place, or if one partner becomes the owner of the whole of the partnership property by purchase from his co-partner, then an exemption may be claimed.

SAME.—*When Severance May Take Place.*—Partners, acting in good faith, have a right to sever their joint interest in the firm property by con-

tract of sale from one partner to another, or by a division of the property between them, at any time before the firm creditors obtain a lien thereon, and thereafter claim an exemption from execution, although at the time of the severance the firm be insolvent.

WITNESS.—*Examination of.*—*Leading Questions.*—Unless it appears that the trial court abused its discretion in allowing leading questions to be put to a witness, a judgment will not be reversed on that account.

From the Marion Superior Court.

*H. J. Milligan,* for appellant.

*H. C. Allen,* for appellees.

OLDS, J.—This is an action of replevin brought by appellee Werbe against appellant and appellee Plummer. Plummer filed a disclaimer in the court below and is only a formal party.

The court made a special finding of facts, and stated conclusions of law thereon. Appellant excepted to the conclusions of law, and filed a motion for a new trial, which was overruled, and judgment entered for appellee Werbe. The facts found by the court are as follows:

On November 27th, 1883, Henry Schnull and William A. Krag recovered three several judgments against appellee Werbe and one Ruth Domauget, before Charles B. Feibleman, a justice of the peace, in Indianapolis, as follows: One for $166.40 and costs; one for $181.64 and costs, and one for $167.25 and costs. It being made to appear by affidavit that delay would endanger their collection, on the same day executions were issued on said judgments and placed in the hands of the appellant, Goudy, as constable. On the same day appellant, as constable, levied said executions on the property described in the complaint as the property of the firm of E. F. G. Werbe & Co., composed of appellee Werbe and Domauget, and took possession of the property.

At the time of said levy, and for a long time prior thereto, appellee Werbe was a married man and a householder, residing in the city of Indianapolis with his family.

On November 21st, 1883, the firm composed of Werbe

and Domauget were carrying on the business of retail grocers in the city of Indianapolis, and being indebted to Schnull & Krag for groceries theretofore sold them, they executed to Schnull & Krag their three promissory notes in settlement of said indebtedness, payable one day after date, signed by the firm name of E. F. G. Werbe & Co., and it was upon these three notes that the judgments were rendered. The suits on the notes were commenced November 24th, 1883, and summons served the same day, returnable on November 27th, 1883, at nine o'clock A. M. After the service of said summons, to wit, November 26th, 1883, Werbe & Co., being indebted to Stephens & Co., of Cleveland, Ohio, in the sum of $400, settled with them by giving them part of the goods purchased of Stephens & Co., which constituted part of the stock of Werbe & Co., to the amount and value of $250, and for the balance of the debt to Stephens & Co., executed a chattel mortgage on the other goods and property of the firm. On the same day, November 26th, 1883, Werbe and Domauget entered into a written agreement dissolving the partnership existing between them, and in consideration of $200 paid Domauget by Werbe, and in consideration that Werbe assumed and agreed to pay all the debts and liabilities of the firm of every kind and nature, Domauget sold and transferred to Werbe all her right and interest in the firm business and all the property held and owned by them as such partners, of every nature and kind, particularly describing some portion of the property which was to be held and owned by Werbe in his own right exclusively; that Domauget was the mother-in-law of Werbe; she was sixty-five years old, was in feeble health, and was making her home with Werbe, having little or no knowledge of the business. In pursuance of the written contract, the firm was dissolved on the 26th day of November, 1883, and Domauget received $200 cash, and Werbe took the firm assets and assumed the firm debts. Werbe took exclusive possession of the prop-

erty, including the property involved in this case, and thereafter held it.

At the date of the dissolution the assets of the firm consisted of merchandise of the value of $762.48, and small accounts, aggregating $1,396.95, but only of the value of $137.52, in addition to the $200 paid Mrs. Domauget.

At the date of dissolution the firm was indebted to various creditors in the sum of $800, after payment of Stephens & Co.'s debt. Werbe had no individual property, but was indebted on a judgment in the sum of $200. Mrs. Domauget had no property except her interest in the firm.

On the morning of November 27th, 1883, at 10 o'clock, Werbe and Domauget, without fraudulent intent, voluntarily entered their appearance to the actions that day filed against them before T. W. Pease, a justice of the peace, and by agreement judgments were entered in said cases upon the firm debts as follows: In favor of Blanton, Watson & Co. for $71.80, and costs; in favor of Byram, Cornelius & Co., $49.42, and costs; and in favor of Raschig for $55.80. Executions were at once issued on said last described judgments, and placed in the hands of Hiram Plummer, a duly qualified constable, who at once levied the executions upon all of the property turned over by the firm of Werbe & Co. to Werbe on the preceding day, and including the property in this case. Appellant Goudy levied his executions later in the day on the same property.

Before the day of sale, Werbe filed with said constables Plummer and Goudy his schedule of all his property of every nature, in due form of law, properly executed and verified, which schedule included the property involved in this case and claimed to be exempt. Werbe thereupon demanded that the property in question be set off to him as exempt, but Plummer took and sold upon his execution all the property save what was so claimed as exempt, and left for Goudy only the property claimed as exempt, the same being of the value of $524. Goudy refused to deliver said property to Werbe,

but claimed it was firm property, and not exempt from execution, and after the commencement of this suit sold said property as the property of the firm of Werbe & Co.

At the time of the dissolution and transfer from Domauget to Werbe, neither said Domauget nor Werbe intended or designed to cheat, defraud or hinder or delay Schnull & Krag, or any other creditor, nor was the transfer made for the purpose of securing an exemption.

As a conclusion of law the court found for the plaintiff Werbe; that he was entitled to a return of the property so sold, to a personal judgment for the value thereof, the return of the property to act as a satisfaction of the judgment to be rendered. The judgment provided that Werbe was the owner and entitled to the possession of the property at the time of the commencement of this suit, and that Goudy unlawfully detained the same.

It is contended by counsel for the appellant that the facts found by the court entitled him to judgment in his favor, and if they do not, the evidence shows a state of facts different from that found by the court.

It is further contended by counsel, that the facts found by the court show such a disposition of the firm property by the firm of Werbe & Co. as operated as a fraud against the creditors, and that such transfer of the firm property from the firm to Werbe by Domauget selling her interest in the property to Werbe, when the firm was insolvent, in consideration of $200, and Werbe's agreement to pay the firm debts, is void as to the creditors; that this is true notwithstanding there was no moral turpitude on the part of the partners; that they are conclusively presumed to intend the natural consequences of their own acts, and are not relieved therefrom by reason of there being no moral turpitude on their part; that the finding of the fact by the court that neither of the partners intended or designed to cheat, defraud, hinder or delay Schnull & Krag, or any other creditor, and that the transfer was not made for the purpose of securing an exemp-

tion, only amounts to a finding that there was no moral turpitude on the part of the partners.

It is first important to determine whether the transfer made by the partners, Werbe and Domauget, severing the joint interest in the partnership property, and Werbe taking all the property and agreeing to pay all the debts, did operate as a fraud. By the terms of the sale of Domauget's interest in the firm property to Werbe, and Werbe agreeing to pay the firm debts, in the absence of fraud the property became the individual property of Werbe, and he was individually liable for the firm debts. The creditors might have availed themselves of the contract and sued Werbe individually, and if he had individual property, they could have subjected it to sale for the payment of their claims. They would have been placed on an equal footing with his individual creditors, and could not have been postponed from subjecting individual assets to payment of their debts until after the individual creditors were paid. In the absence of fraud they became his individual creditors; the property became his individual property. The firm creditors had no lien on the firm property. *Warren* v. *Farmer*, 100 Ind. 593.

It is asserted that there is no right of exemption out of firm property. That may be regarded as the settled law, and the weight of authorities is no doubt in support of this doctrine, though the case on which all the decisions in other later cases are based in this State is that of *Love* v. *Blair*, 72 Ind. 281, and the court in that case does not so hold. It is stated in the opinion that "The weight of authority is decidedly in favor of the proposition, that one partner can not claim any part of the property of an existing partnership as exempt from sale upon execution against him." It is further said: "There is, indeed, considerable conflict upon this question, and many courts declare the rule different from that stated. But, however it may be as to the rule just stated, it is very clear that one partner can not claim as exempt partnership property mortgaged by the

partnership to secure a partnership debt." In the cases following.it is assumed that the question was decided in this case, when in fact it was not. Yet it is proper to regard it as settled in this State, that there is no right of exemption of firm property, but this only applies while it remains firm property. When the joint interest in the property is severed by the sale of one of the partners to the other of his interest in the firm property, then it is no longer firm property, and the debtor has the right to an exemption. Some courts hold that this severance may take place even after the levy of the writ; others hold that it must take place before the levy to entitle the debtor to an exemption of the property.

In Wisconsin it is held that the severance may take place after the levy, and each partner take his exemption. *Russell* v. *Lennon*, 39 Wis. 570; *Newton* v. *Howe*, 29 Wis. 531.

In the case of *O'Gorman* v. *Fink*, 57 Wis. 649, the court holds that consent of the partners that each shall select an exemption out of the partnership property after a levy thereon, constitutes and amounts to a severance of the joint property. The courts of Michigan, Georgia and other States hold the same as to the right of exemption in partnership property, and that the severance may take place after the levy of the writ. *Skinner* v. *Shannon*, 44 Mich. 86; *Blanchard* v. *Paschall*, 68 Ga. 32.

It is not by reason of any right that the firm creditors have as firm creditors that the partnership debtor can not claim an exemption of firm property, but it is by reason of the fact that the debtor does not own any separate part of it. The rights of the firm creditors are worked out through the partners.

In the case of *Warren* v. *Farmer*, *supra*, this court says: "Partnership creditors have no lien upon partnership property; their right to priority of payment out of the firm assets, over the individual creditors, is always worked out through the liens of the partners."

In *Pond* v. *Kimball*, 101 Mass. 105, the court says: "Prop-

erty belonging to the firm can not be said to belong to either partner as his separate property. He has no exclusive interest in it. It belongs as much to his partner as it does to him, and can not in whole or in part be appropriated (so long as it remains undivided) to the benefit of his family."

In *Haas* v. *Shaw*, 91 Ind. 384, 396, this court says: "A partner can not claim partnership property as exempt from execution, for the reason that he has no individual interest in it."

In the case of *Smith* v. *Harris*, 76 Ind. 104, it is held that if the partnership interest in the property is secured by one partner purchasing the interest of the others before the issuing of the writ, the debtor may hold such property as exempt. The court in that case says: " The property in controversy had been seized by the appellee Harris, a constable, by virtue of an execution issued upon a joint judgment against the appellant and one Potts. The appellant claimed the property as his own, and as exempt from sale on execution, under the exemption law. The court instructed the jury, in effect, that the lien of the writ attached to the goods when it came to the constable's hands, and that, if at that time the property was partnership property, and was subsequently made the property of the plaintiff, by Potts releasing his interest to the plaintiff, this would not defeat the lien of the writ, and the appellant would not be entitled to claim it as exempt. This presents the main question which counsel have discussed; that is to say, whether partnership property, or an interest therein, can be claimed as exempt from execution by the individual members of the firm. The question has been already decided in the negative by this court. *Love* v. *Blair*, 72 Ind. 281. Whether the exemption could be claimed, depended on the ownership at the time the writ issued and became a lien, and so the issue was distinctly submitted to the jury. There was no error in the instruction in this respect."

The courts universally hold that exemption laws should be liberally construed.

In the case of *Blair* v. *Smith*, 114 Ind. 114, this court holds that there can be no fraudulent conveyance of property not subject to execution. The court says: "If the property is not subject to execution, the debtor has an absolute right of disposition, with which creditors can not interfere."

If the partners had the right to sever their interests in the partnership property at any time before the writ of execution issued and became a lien on the property, notwithstanding the insolvency of the firm, and thus hold an exemption out of the property, then there was no fraud in the transaction in this case, and the finding of the court and the conclusions of law were correct.

It is contended by counsel for appellant that, the firm being insolvent, the members of the firm, or at least Werbe, must have known the condition of the firm as to ability to pay its debts, and therefore the severance of the joint interest, entitling Werbe to an exemption, was in itself a fraud, although done in good faith. Applying this theory to its legitimate extent, if sound, where does it lead us? Any disposition of property by an insolvent debtor after he knew himself to be insolvent, although done in the best of faith, which operated to the detriment of any of his creditors, would operate as a fraud. The same rule that would make the transfer of firm property fraudulent would make the transfer of individual property fraudulent, and if an insolvent debtor's property, during any time of the existence of the debt, was subject to execution, he could do no act by which he could or would be entitled to exemption. If an insolvent debtor owned property of a kind or character which was not exempt, he could not exchange it for property which would be exempt, and if he did so it would operate as a fraud on his creditors, and he could not hold such property as exempt. But a step further on the same line of reasoning:

If an unmarried man, who was not entitled to exemption, owned property, but was owing debts so that he was in fact insolvent, and he married before judgment was rendered, he could not claim an exemption, for it could be said with the same force that counsel say," that when a partnership is insolvent and known to be so, the partners become, as it were, trustees for the creditors to wind up the firm affairs," that when a person becomes insolvent and knows himself to be so, he, too, acts as trustee for his creditors, and any act which deprives them of any portion of his estate, although done in good faith, would operate as a fraud upon his creditors and he could not take the benefit of it.

The principle applied in the case cited, *Coons* v. *Tome*, 9 Fed. Rep. 532, where the directors of an insolvent corporation confessed judgment in favor of one of their number with a view of giving him a priority of lien, and it was held that they could not give him a priority over other creditors, does not apply to prevent parties from deriving the benefit of the exemption law. The exemption law is a humane provision for the benefit of the families of debtors, that debtors may not have the last farthing taken from them, and their wives and dependent children left without sustenance. We are unable to see why they should not have the right of exemption against partnership creditors and out of partnership property, except for the reason given, that the partnership debtor owns no separate part of the partnership property.

Wait on Fraudulent Conveyances, at section 47, says: " It being the general rule that exempt property is not ordinarily susceptible of fraudulent alienation as regards creditors, it has been decided that there is no intelligible ground upon which it can be held to be fraudulent as against them, for a person whose property does not in the aggregate exceed the value of all the exemptions, but a portion of which property in its present state is not exempt, to convert or exchange it into the particular kinds of property which are exempt. Thus, in *O'Donnell* v. *Segar*, 25 Mich. 367, the

court said: 'The only fraud claimed to have existed in
reference to the oxen, was that he might fraudulently have
acquired them from the proceeds or exchange of other prop-
erty which was not exempt, and this, with the intent to de-
feat the claims of creditors.   This, in my opinion, if true,
does not constitute legal fraud, so long as he was, in fact,
engaged in one of the occupations mentioned, * * in which
the use of the cattle was needed.'   In *Randall* v. *Buffington*,
10 Cal. 491, the court decided that a general creditor of an
insolvent debtor could not subject a homestead to liability
for his debts, notwithstanding that the insolvent had applied
property in his hands to the payment of a debt which was a
lien on the homestead.   'It must be remembered,' said Chief
Justice BREESE, 'that it is not a fraud on creditors to buy a
homestead which would be beyond their reach.'   This would
seem to afford a debtor an opportunity to practice a species
of petty fraud upon his creditors, but, as exemptions of prop-
erty from execution are usually very limited in amount, and
the policy of the law is to prevent the creditor from abso-
lutely stripping the debtor of every vestige of property and
of all the necessary conveniences of living, or means of gain-
ing a subsistence, the result is not to be deprecated.   The
creditors should not be favored to the extent of absolutely
crippling and pauperizing the debtor."

In the case of *O'Donnell* v. *Segar*, 25 Mich. 367, the court
says: "I am at a loss to perceive how the plaintiff could have
been deprived of the statute exemption by clear proof that
he had purposely disposed of all the property he had which
was subject to execution, for the purpose of investing the
proceeds in, or converting them into, that kind of property
which was exempt under the statute."   And the court, in the
same opinion, further says: "When the statute exempts from
execution certain kinds of property to certain amounts, with-
out any exception or qualification on the ground here urged,
I can see no intelligible ground on which it can be held
fraudulent for any man whose property does not, in the ag-

gregate, exceed the aggregate value of all the exemptions, but part of which, in its present shape, is not exempt, to convert or exchange it into those particular kinds of property which are exempt."

There are numerous cases supporting the doctrine laid down by Wait. See *Randall* v. *Buffington*, 10 Cal. 491; *Hixon* v. *George*, 18 Kans. 253; *Cipperly* v. *Rhodes*, 53 Ill. 346.

The law gives to the debtor in this State $600 as exempt from execution. If he has property of that value he can claim it as exempt from execution. He may have borrowed the money to pay for every dollar of the property, and yet when he is sued he claims the property as exempt. It very often seems to the creditor a hardship, yet it is a right given to the debtor by statute, and is a wise and humane provision. Many States make still more liberal provisions for the unfortunate debtor. If this right is given against the individual creditor, and if the individual debtor may convert certain property not exempt into property which is exempt, and such act not constitute a fraud, why should not the partnership debtor have the right to sever the joint interest in the property and hold his exemption out of such property?

The exemption law is made for the insolvent debtor; it is he that it is intended to protect. The solvent debtor needs no protection by the way of an exemption. It is only where a debtor becomes insolvent that he is protected by the exemption.

In the case of *Fisher* v. *Syfers*, 109 Ind. 514, this court says: "Partners, the same as others, may, by sale or mortgage of the partnership property, give a preference to their creditors. If a sale or mortgage is made in good faith, to secure a *bona fide* debt or debts, the transaction can not be successfully assailed, on the ground that the creditors preferred are the individual creditors of the several partners."

The true doctrine is, that the property of the partners is their joint property, and they may sell and dispose of the

same in good faith as they deem proper, and as held in the case of *Fisher* v. *Syfers, supra,* they have the right to prefer creditors, and even may, if all the partners consent to do so, dispose of the property to satisfy the individual debt of one of the partners, which would operate to decrease the assets of the firm and to the detriment of the firm creditors, yet, nevertheless, they have such right to secure or pay the *bona fide* debt of one of the partners. We submit there is no difference in principle between this and the act complained of in this case, even if done with the intent and purpose of giving Werbe the benefit of an exemption out of the property. It was simply, by agreement, severing the joint interest in the partnership property to allow Werbe to take the benefit of such severance, to secure to him the benefit of an exemption given to him by law. Neither is it different in principle from allowing a debtor to exchange or convert property not exempt for such as is exempt, which doctrine, we think, is sustained by the weight of authority, and in harmony with the just principles of law and equity in construing the exemption laws.

It is supported by the authorities, and we hold that partners have the right to, in good faith, sever their joint interest in partnership property by contract of sale from one partner to another, or by a division of the partnership property between the partners, at any time before the firm creditors obtain a lien upon such firm property; that when the joint interest is severed the individual partners have the right to an exemption out of the property; that the fact that such firm is insolvent at the time of the severance, and that the severance is made with the knowledge on the part of the partners that it gives to them the right of exemption out of the property, does not constitute conclusive presumption of fraud upon the firm creditors which will deprive the individual partners of the right to have an exemption of such property. With this version of the law, it follows that the finding of

facts was supported by the evidence, and that the conclusions of law as stated by the court below are correct.

It is insisted by counsel for appellant that the court erred in permitting certain questions to be put by counsel for appellee to Mrs. Domauget, which it is claimed are leading.

The permission of leading questions is much in the discretion of the trial court, and unless it appears that such discretion was abused, this court will not reverse a case on that account. It does not appear but that such discretion was properly exercised by the trial court in this cause.

There is no error in the record for which the judgment ought to be reversed.

Judgment affirmed, with costs.

Filed Jan. 30, 1889.