<hr />

TOOTLE, HOSEA & CO. v. C. R. RICE *et al.*

1. PARTNERSHIP PROPERTY — *Application to Individual Debts.* The property of a copartnership is the joint property of the partners, and, unless all the partners consent to do so, one partner cannot dispose of the property of the partnership to satisfy his individual debts.

2. EVIDENCE — *Nonconsenting Partner — Rights of Creditors.* The consent of a partner to the sale and transfer of the joint property of the partnership by one partner to satisfy his individual debts must be established in a satisfactory manner, not resting upon vague and uncertain inferences; otherwise, the rights of the nonconsenting

partner may be improperly sacrificed, and the creditors of the partnership unjustly deprived of a priority of payment out of the partnership assets.

*Error from Pratt District Court.*

Tootle, Hosea & Co., wholesale dealers, on April 29, and 30, 1890, sold and shipped to C. R. Rice & Co., a partnership composed of C. R. Rice and George Schowe, retail dealers, at Preston, Pratt county, goods amounting to nearly $1,200. On July 19, 1890, there was past due on the account $599.26; balance of account not then due. Plaintiffs brought two separate actions against Rice & Co., and attached part of the stock into which their goods entered. In the action on that part of the account which was due, the Bank of Kansas intervened by motion to discharge the attachment, claiming to be the absolute owner of the stock. The bank was a partnership at Canton, in this state, composed of George Schowe, E. A. Dupree, and others. This is a contest between the plaintiffs, the attaching creditors, and the bank, on the motion to discharge the attachment. The district judge sustained the motion. The following are the findings of fact made and filed by the district judge:

"1. Some time in the latter part of 1889 or the fore part of 1890, goods, wares and merchandise to the amount of $4,000 were turned over to the Bank of Kansas to secure an indebtedness of Dupree Bros. & Mace to the bank.

"2. The bank is now and has at all times herein been a copartnership, doing business at Canton, McPherson county, in this state, and until about the 14th of July, 1890, George Schowe was the cashier thereof, assuming and performing the ordinary duties of the office.

"3. Some time in April, 1890, George Schowe employed C. R. Rice, at a salary of $45 per month to take a part, to wit, $4,000 worth, of the goods to Preston, in this state, for the purpose of selling the same at retail in the name of C. R. Rice & Co., and authorized C. R. Rice to purchase additional goods to keep up the stock, and do other business necessary to carry on the same.

"4. On the 26th day of April, 1890, George Schowe wrote plaintiffs that he (Schowe) was the company part of the firm

37—53 kas.

of C. R. Rice & Co., and gave directions as to the purchase of the goods.

"5. Plaintiffs, after the receipt of the letter, shipped about $1,200 worth of goods, which have not as yet been paid for.

"6. C. R. Rice took the $4,000 worth of goods, together with the goods purchased of plaintiff and others, to Preston, in this state, and commenced and carried on business in the firm name of C. R. Rice & Co. until July 17, 1890.

"7. C. R. Rice & Co. had an account, during that time, with the Bank of Kansas.

"8. On the 14th day of July, 1890, bills of sale were executed by George Schowe, for and in the name of C. R. Rice & Co., transferring all of the goods at Preston to E. A. Dupree, who executed a bill of sale of same to the Bank of Kansas, for the consideration that $4,000 should be credited on the note of Dupree Bros. & Mace, owned and held by the bank, and that $2,000 should be credited on the individual indebtedness of George Schowe to the bank.

"9. At the time of the transfer, the bank knew of the business of George Schowe in the name of C. R. Rice & Co.

"10. C. R. Rice and George Schowe are now, and ever since the transfer have been, insolvent.

"11. On the 15th day of July, 1890, D. M. Bell, for the Bank of Kansas, took possession of the stock of goods, with the consent of C. R. Rice; after Bell left Preston for his home, Rice telegraphed Bell that he would not give up the goods until plaintiffs' claims were paid. On July 17, 1890, Bell returned and took possession of the goods for the bank, in the absence of C. R. Rice, by forcibly opening the door of the storeroom. Soon thereafter plaintiffs were notified of the action of Bell by a telegram sent by C. R. Rice, and on the 19th day of July plaintiffs instituted this action.

"12. C. R. Rice assents to the action of the plaintiffs in this suit."

The following are the conclusions of law which were filed by the judge:

"1. C. R. Rice and George Schowe each held themselves out to plaintiffs as copartners doing business as C. R. Rice & Co., and, as to plaintiffs, would be legally bound as such.

"2. George Schowe was, at the time of the sale and transfer of the goods to E. A. Dupree, the absolute owner thereof.

"3. By the sale and transfer, Dupree became the owner,

and for a valuable consideration sold and transferred the same to the Bank of Kansas.

"4. At the commencement of this action, and at the time of the levy upon the goods, the Bank of Kansas was the absolute owner thereof.

"5. The motion of the Bank of Kansas to release and discharge the goods from the writ and levy of the attachment is well taken, and ought to be sustained."

The attachment was dissolved, and the property discharged. The plaintiffs excepted to the discharge of the attachment, and they bring the case here.

*Reed & James*, for plaintiffs in error:

1. Under the facts in evidence in this case, the bank is estopped from denying that C. R. Rice & Co. was a partnership, and that the property in controversy was at the time of the transfers by bills of sale firm property. And "When one of two innocent parties must suffer by a third, he who has enabled such third party to occasion such loss ought to sustain it." *Anderson v. Anderson*, 69 Ill. 452; *Gray v. Crockett*, 35 Kas. 66; 10 Pac. Rep. 452, 457; *Rice v. Groffman*, 56 Mo. 434, 437.

2. "Partnership creditors have a primary and exclusive claim upon the partnership assets of . . . insolvent partners." *Tenney v. Johnson*, 43 N. H. 144; *Phelps v. Mc-Neeley*, 66 Mo. 554, 559; *Flannegan v. Alexander*, 50 id. 50; *Ackley v. Staehlin*, 56 id. 561; *McDonald v. Cash*, 45 Mo. App. 66; *In re Edwards*, 47 Mo. 307; *Reyburn v. Mitchell*, 106 id. 365, 375, 377; *Bowen v. Billings*, 13 Neb. 439, 448; *Roop v. Herron*, 15 id. 73, 80, 81; *Patterson v. Seaton*, 28 N. W. Rep. (Iowa,) 598; *Hundley v. Farris*, 103 Mo. 78.

3. Even if Rice consented to Schowe's paying Schowe's individual debts out of firm assets, in preference to paying firm creditors, as the firm and both Rice and Schowe were insolvent, such consent was fraudulent and void. *Menagh v. Whitwell*, 52 N. Y. 146; *Bulger v. Rosa*, 119 id. 459, 465; *Patterson v. Seaton*, 28 N. W. Rep. (Iowa,) 598; *In re Ed-*

*wards*, 47 Mo. App. 313, 314; *Reyburn v. Mitchell*, 106 Mo. 376, 377.

*Jones & Jones*, for defendant in error:

That the partnership property may be appropriated to the payment of the individual indebtedness of one of the partners with the assent of the copartners, although the partnership is insolvent, is settled by the decision of this court in the case of *Woodmansie v. Holcomb*, 34 Kas. 38. In that case this court said:

"The weight of authority seems to be that mere insolvency, where no actual fraud intervenes, will not deprive the partners of their legal control over the property and of the right to dispose of the same as they may choose; and where the separate creditor purchases from the firm in good faith, and the individual indebtedness is a fair price for the property purchased, such purchase cannot of itself be held fraudulent as against the general creditors of the firm."

In support of this position numerous authorities are cited by this court. See, also, *Berkley v. Tootle*, 46 Kas. 336.

The finding by the lower court, that C. R. Rice assented to the sale by Schowe, of the goods which the plaintiff attached, certainly settles every question which could possibly be argued in this case by plaintiff in error.

The opinion of the court was delivered by

HORTON, C. J.: Tootle, Hosea & Co., the plaintiffs, sold their goods on the credit of the firm of C. R. Rice & Co., and their ownership of a $4,000 stock. George Schowe really owned the goods, but employed C. R. Rice on a salary to take charge of the stock, to operate the store at Preston, to sell at retail in the name of C. R. Rice & Co., to buy goods for the store in that name, and to do all other necessary business pertaining thereto. Rice had no capital in the business. The Bank of Kansas was a partnership, composed of E. A. Dupree, George Schowe, and others. Schowe was a director, the cashier and general manager of the bank up to July 14,

1890. On July 14, 1890, D. M. Bell was the president. Under the findings of the trial court, as C. R. Rice and Geo. Schowe held themselves out to the plaintiffs as copartners as "C. R. Rice & Co.," both were legally bound for the payment of the goods purchased by them from the plaintiffs. On the 14th day of July, 1890, Rice and Schowe were insolvent. On that date, a bill of sale was executed by George Schowe, in the name of C. R. Rice & Co., transferring the stock of goods at Preston to E. A. Dupree, to satisfy his individual debts, and Dupree executed a bill of sale of the same goods to the Bank of Kansas.

As to the power of Schowe to make such a disposition of the firm property with the consent of C. R. Rice, if of no actual fraud intervened, see *Woodmansie v. Holcomb*, 34 Kas. 38; *Berkley v. Tootle*, 46 id. 336; *Goudy v. Werbe*, 117 Ind. 154; *Purple v. Farrington*, 119 id. 164; *Fitzpatrick v. Flannagan*, 106 U. S. 648; *Huiskamp v. Wagon Co.*, 121 id. 310, and cases cited. C. R. Rice, being legally bound with George Schowe for the goods purchased of the plaintiffs in the name of the firm of C. R. Rice and Co., had the right to have the firm assets of C. R. Rice & Co. appropriated to the payment of the partnership creditors, including the plaintiffs, over the individual creditors of George Schowe. Therefore the firm of C. R. Rice & Co., having possession and control of the firm assets, had the right, in order to make an honest disposition of their goods, to secure or pay the plaintiffs out of the partnership property. George Schowe, while the partnership remained in existence, could not, without the consent of C. R. Rice, sell and transfer the firm property in payment of his individual debts.

1. Partnership property—application to individual debts.

There is no finding of the trial court that Rice consented to the bill of sale of the stock of goods by Schowe to Dupree or to the bank in satisfaction of his individual debts. The bill of sale of the 14th of July, 1890, by Schowe to Dupree, was made at the time without the knowledge or consent of Rice.

The only finding tending to support any consent on the

part of Rice to the transfer of the goods by Schowe to Du-
pree, or to the bank, is the finding of fact by the trial court
that on the 15th day of July, 1890, D. M. Bell, for the bank,
took possession of the stock of goods, with the consent of C.
R. Rice. ° Bell, the president of the bank, on the next morn-
ing after the bills of sale were executed, went to Preston. He
testified that "he then took charge of the stock of goods, and
that everything was satisfactory;" but it appears from his
own evidence that he did not reach Preston until about 10
o'clock in the morning and left at 12:30, noon, of the same
day. He told Rice he represented the bank; that he had a
bill of sale from George Schowe for the stock of goods, and
had come down to take charge of the same. He gave Rice
various orders, and also obtained $5, which he requested him
to charge up in his statement to the bank, but he did not ex-
hibit to Rice the bills of sale, and it does not appear that
Rice understood their terms at that time. He did not ask or
obtain the keys of the store from Rice, and there was no ac-
tual transfer of the possession of the stock of goods by Rice
to Bell, or to anyone for the bank. The evidence is not suffi-
cient to show any actual consent of Rice to a sale or transfer
of the firm property in payment of the individual debts of
Schowe. Bell acted, in his interview with Rice, as if the
latter was a clerk only and had no rights in the firm prop-
erty or to protect the firm debts. About all he did on his
first trip to Preston was to give directions to Rice about the
store, and the keeping of the accounts of the business in the
future. He did not discuss with Rice the terms of the bills
of sale, or notify him of the consideration of the sale, or ask
his consent thereto. He merely assumed he had charge, and
that Rice would act as directed. Rice did not say that he
agreed to the sale or would follow out the directions given by
Bell about the store, stock, and accounts. When Bell reached
Lyons, where he lived, on the afternoon or evening of the
day he was at Preston, he found for him a telegram from C.
R. Rice, which read:

"*To D. M. Bell, Lyons, Kas.:* Will hold this stock in old

firm name until all bills are settled to protect my name.  See letter at Canton.                    CHARLES R. RICE."

On the 17th day of July, Bell returned to Preston, and took actual possession of the goods of the firm of C. R. Rice & Co., in the absence of C. R. Rice, by forcibly opening the door of the storeroom.   Rice notified at once the plaintiffs of this, and on the 19th of July, 1890, the plaintiffs instituted their action to recover upon their account for the goods sold to C. R. Rice & Co.   As the partnership creditors of C. R. Rice & Co. were entitled to priority of payment out of the partnership assets, unless both members consented, with a full knowledge of all the facts, to the sale of Schowe, and as C. R. Rice was clearly bound with Schowe for the payment of the claims of the plaintiffs, we ought not to sustain any consent to the sale, unless the evidence thereof 2. Evidence— is satisfactory.  Vague and uncertain inferences nonconsenting partner—rights will not do.   To do otherwise would be gross of creditors. injustice, not only to the creditors of the partnership, but to C. R. Rice.   As he neither signed the bills of sale, nor actually consented thereto with a knowledge of their terms, neither Dupree nor the bank became the owner of the property belonging to the firm of C. R. Rice & Co., as against the plaintiffs — the attaching creditors.

The order of the district court sustaining the motion to discharge the attached property will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.