SELZ, SCHWAB & COMPANY ET AL. *v.* MAYER ET AL.

[No. 18,446.   Filed November 3, 1898.]

PARTNERSHIP.—*Dissolution.*—*Assignment of Interest of One Partner.* — *Consideration.*— Where a partnership was dissolved and one member assigned his interest therein to the other members who composed another firm, an agreement on the part of such members to pay the debts of the dissolved firm and to cancel an indebtedness due from such retiring member constituted a sufficient consideration to support the assignment.   *pp. 422-428.*

SAME.—*Creditors.*—*Equitable Lien.*—The equitable lien of creditors upon the assets of a partnership depends upon the liens of the partners, and such lien may be waived or parted with by the partners. *pp. 428, 429.*

SAME.—*Creditors.*—*Equitable Lien.*—A sale by a partner of his interest in the partnership property, in the absence of fraud, is a waiver of his lien on the partnership assets, and thereafter the creditors of the firm cannot avail themselves of the lien for the satisfaction of their debts against the partnership assets.   *p. 429.*

SPECIAL FINDING.— *Fraud.*—*Burden of Proof.*—*Action to Set Aside transfer of Property.*—Where it was alleged in a complaint to set aside a mortgage given to secure preferred creditors, that the mortgage was made with intent to defraud creditors, the burden rested upon plaintiff to show fraud, and the failure to find such fraudulent intent is equivalent to a finding that there was no fraudulent intent. *p. 430.*

SAME.—*Venire de Novo.*—Where it was alleged in a complaint to set aside a transfer of property and a mortgage made thereon to secure preferred creditors that the transfer and mortgage were made with a fraudulent intent to cheat, hinder, and delay creditors, the failure to find such fraudulent intent did not make the finding defective so as to require plaintiff's motion for a *venire de novo* to be awarded. *p. 431.*

From the Fulton Circuit Court.   *Affirmed.*

*Harley A. Logan*, for appellants.

*Leopold M. Lauer, Charles P. Drummond* and *Samuel Parker*, for appellees.

McCABE, J.—The John V. Farwell Company, the Durand & Kasper Company, the Havens Geddes Company, and Selz, Schwab & Company, being four several

corporations, as judgment creditors of a part of the defendants, sued the appellees to compel the application of certain assets in the hands of the defendants, to be applied to the payment of the plaintiffs' several judgments, to set aside a certain mortgage of certain goods as fraudulent, the sale of the property mortgaged, and the application of the proceeds to the payment of the several judgments of the several plaintiffs, and asking the appointment of a receiver. The issues formed upon the complaint were tried by the court, resulting in a special finding of the facts, upon which the court stated conclusions of law leading to judgment for the defendants. The conclusions of law and the trial court's refusal to award a *venire de novo* are called in question by the assignments of errors. All of the plaintiffs have been joined as appellants in this court, but all of them, except Selz, Schwab & Co., having been notified, have declined to join in the appeal. The action was commenced in the Marshall Circuit Court and afterwards the venue was changed to the Fulton Circuit Court. The substance of the facts found is: That Sigmund Mayer and Lambert Nussbaum, both of Plymouth, Marshall county, Indiana, for many years prior to February 28, 1896, were engaged in business at said Plymouth, as merchants, under the firm name of Nussbaum & Mayer. That during said time they established a general store in the village of Marmont, in said county, and in the year 1896 took as a partner in the business at Marmont one Henry M. Speyer, said business in said town being carried on under the firm name of Nussbaum, Mayer & Company. Said firm of Nussbaum & Mayer, of Plymouth, furnished all the capital for the business at Marmont, and that firm was to have one-half of the profits of the business at Marmont, and Speyer the other half. Said Speyer was to superintend and man-

age the business at Marmont in consideration of his said share of the profits. During the existence of said partnership at Marmont, and some time prior to February 28, 1896, said firm of Nussbaum, Mayer & Company became indebted to the plaintiff the John V. Farwell Company, and was so indebted on said date in the sum of $1,390.20, and to the Durand & Kasper Company in the sum of $247.89, to Selz, Schwab & Company in the sum of $1,049.68, and to the Havens & Geddes Company in the sum of $299.41. That the claims of said plaintiffs were afterwards, but before the bringing of this action, reduced to judgment in the Marshall Circuit Court, which claims are unpaid. That on said date said Nussbaum, Mayer & Company's assets consisted of a stock of goods of the value of between $4,000 and $5,000, notes and accounts due the firm of about $1,000, and of real estate, consisting of a store building and some lots of the value of about $2,000, and had no other property. That said firm was then indebted for borrowed money and for goods in the sum of $10,500, and was insolvent. That the firm of Nussbaum & Mayer, of Plymouth, a member of the firm of Nussbaum, Mayer & Company, of Marmont, on said date had assets, consisting of real estate, goods, notes and accounts, of the value of about $9,000, and was indebted for borrowed money and for goods about $13,000, and was insolvent. That on said date said Nussbaum & Mayer, as one member, and said Henry M. Speyer as the other member of the Marmont firm, entered into a written agreement of dissolution of the same, providing therein, as a consideration, for the withdrawal of Speyer therefrom, the assumption by Nussbaum & Mayer of all indebtedness of said firm of Nussbaum, Mayer & Company, and the surrender and satisfaction of the indebtedness of about $300 due from Speyer to the firm

of Nussbaum, Mayer & Company, providing in said instrument that the dissolution was not to take effect until the next day, February 29; that there was no other consideration for such dissolution. That on the next day, February 29, 1896, said Henry M. Speyer, in pursuance of said contract, transferred to said Nussbaum & Mayer all of his interest in the assets of the firm of Nussbaum, Mayer & Company and retired from the firm. That, on said last mentioned date, said Nussbaum & Mayer, as a firm and as individuals, executed a mortgage on all the real estate and goods, which constituted assets of the dissolved firm prior to said dissolution, and on the assets of the firm of Nussbaum & Mayer, of Plymouth, to secure notes executed by them and others, aggregating $6,474.61, which included a part of the indebtedness of the firm of Nussbaum, Mayer & Company; and said mortgage secured notes described therein for the indebtedness of Nussbaum & Mayer, said notes all bearing the said date of February 29, 1896, and falling due 30 days thereafter, and signed Nussbaum & Mayer, aggregating $10,756.33; that said mortgage was duly executed and acknowledged on said February 29, 1896, and recorded in the office of the recorder of Marshall county, on March 2d, following. That on January 21, 1896, Sigmund Mayer was the owner of a dwelling property constituting his home in Plymouth, which on that day he conveyed to his two sons; that Henry M. Speyer was the owner of a dwelling property and a livery barn in Marmont, worth $1,200, but on which was a mortgage of $300; that, on said 29th day of February, he executed a mortgage to his mother on said property in the sum of $880.37, being a pre-existing debt; that he was then insolvent. That on January 29, 1896, said Lambert Nussbaum was the owner of a dwelling constituting his home, and which he

conveyed to his wife. That all of the items of indebtedness described in said mortgage were for money borrowed from time to time, by the respective firms, covering a period of ten years previous to February 29, 1896, which was evidenced by promissory notes, some of which were renewed from time to time, and the money derived therefrom was used in the business of the respective firms; that on said February 29th some of said notes were due, and some were not due, but all were surrendered on that day, and the notes described in the mortgage executed took the place of the others; that there was no other consideration for the execution of the mortgage; that on said February 29, 1896, said Nussbaum & Mayer assigned to the defendant Leopold M. Lauer all of the notes and accounts due to the firms of Nussbaum, Mayer & Company, and Nussbaum & Mayer, for the benefit of the creditors named in said mortgage; that Nussbaum & Mayer continued in the possession of all of said mortgaged property, and continued to sell at retail goods of both of said stores until April 6, 1896, when Leopold Lauer took possession thereof, and sold the same, under said mortgage and the order of the Marshall Circuit Court; that, during the period from said February 29, to April 6, the sales and collections at the Marmont store amounted to $1,673.50, and the sales and collections at the Plymouth store amounted to $1,556.29; that on May 2, 1896, all of the goods of said Plymouth store were sold at public auction by said Lauer, and brought $950, and on May 1, 1896, all of the goods then remaining at the Marmont store were sold at public auction and brought $3,100; that all of the notes and accounts due to the Marmont store, uncollected, are of the value of $200; that said notes are now, and have been since said February 29, in the possession of said Leopold M. Lauer; that on

April 3, 1896, said Leopold M. Lauer, acting on behalf of the creditors named in said mortgage, paid to each of said creditors fifteen per cent. of the face of their claims; that the remainder of the money, realized from all sources, from the goods, notes and accounts, is now on deposit in the First National Bank of Marshall county, at Plymouth, Indiana. placed there by said Leopold M. Lauer, amounting to $4,947.33; that said contract of dissolution, and the transfer of said notes and accounts of the firm of Nussbaum, Mayer & Company, by said Henry M. Speyer, to said firm of Nussbaum & Mayer, and by said firm of Nussbaum & Mayer to Leopold M. Lauer, and the execution of the notes described in said mortgage, and the execution of the mortgage itself, were all made, done and performed in pursuance of an understanding between all of the members of the two firms that the creditors named in said mortgage were to be preferred over other creditors of said firms, and the entire assets of the two firms were to pass by these transactions to the mortgagees, for the benefit of themselves as preferred creditors, and security for the payment of their said claims.

The conclusion of law upon these facts is to the effect that the plaintiffs cannot recover, and should take nothing by their suit. It is contended that the conclusion of law is wrong, first, at least, as to the assets of the firm of Nussbaum, Mayer & Company, because there was no consideration for the transfer of its assets to Nussbaum & Mayer by the retiring partner, Speyer, and hence it is contended that said firm could not mortgage them.

Assuming, without deciding, that the want of a consideration for the transfer, by Henry M. Speyer to Nussbaum & Mayer, rendered the transfer void, and the mortgage of said assets void also, it is sufficient to

say that the agreement of Nussbaum & Mayer to pay the debts of the firm of Nussbaum, Mayer & Company, and release and cancel the indebtedness of $300 due to the firm of Nussbaum, Mayer & Company, from Henry M. Speyer, the retiring partner, was an ample consideration to support the contract.

But the principal ground on which it is contended that the conclusion of law is wrong is that the mortgage of the partnership property, and the assignment of the notes and accounts of the firm of Nussbaum, Mayer & Company, having been made to secure certain preferred creditors of both firms for pre-existing debts, was not valid as against the creditors of Nussbaum, Mayer & Company.

Appellant contends that the creditors of the latter firm had an equitable lien on all the assets of that firm for the payment of their debts. It is conceded that this lien or preference must be worked out through the liens of the partners, to compel the application of the partnership property and assets to the payment of the partnership debts. *Fisher* v. *Syfers*, 109 Ind. 514, 516; *Elliott* v. *Pontius*, 136 Ind. 641.

As soon as the property of the firm of Nussbaum, Mayer & Company was sold to the firm of Nussbaum & Mayer, and the other firm was dissolved, its property became the property of the firm of Nussbaum & Mayer, and that firm could apply such property to the payment of its debts, the same as if it had never been the property of the dissolved partnership, unless the creditors of the dissolved firm had a lien on the same for the satisfaction of their debts. *Trentman* v. *Swartzell*, 85 Ind. 443, 447. Whether they did have such a lien is the controlling question in this case.

It is well established in this court, and is the uniform judicial opinion everywhere, that such lien may be waived or parted with by the partners; and when

it is so waived or surrendered, the creditors have no lien. This proposition is not controverted by the appellant. The question here is, what will operate as a waiver of the lien by the partners, so as to cut off the partnership creditors from availing themselves of it? It is held by this court that a sale of his interest in the partnership effects by a partner of the firm, in the absence of fraud, is a waiver of his lien on the partnership assets, and thereafter the creditors of the firm cannot avail themselves of the lien for the satisfaction of their debts against the partnership assets. *Trentman* v. *Swartzell, supra; Goudy* v. *Werbe,* 117 Ind. 154, 159; *Purple* v. *Farrington,* 119 Ind. 164. This is the unquestioned rule recognized everywhere, and it is conceded by the appellant's counsel, in the absence of anything in the contract of dissolution and transfer of the property of the dissolved firm indicating an intention on the part of the partners in the dissolved firm to retain the lien of the partners, to compel the application of the property thereof to payment of its debts; and it is contended that the contract by which the remaining partner promised to pay the debts of that firm raised the implication that there was no intention to waive or part with the lien of the partners, and implies an intention by the partners to retain the lien. Many adjudged cases by the courts of last resort of other states are cited, holding that a contract, such as the one found in this case, implies an intention on the part of the partners to retain the lien. These cases recognize the rule that, in the absence of a contract of the kind mentioned, the sale and transfer of the firm property is a waiver or abandonment of the lien of the partners so as to preclude the partnership creditors from availing themselves of it. But the adjudicated cases outside of this State are in conflict on this point, many

of them holding that the partners' liens are waived and abandoned by such a sale and transfer whether accompanied by a contract to pay the partnership debts or not.

Appellant, however, contends that this court has never decided the question. But it has frequently held in just such cases that the lien of the partners is waived and gone, even though the transaction was accompanied by a contract to pay the indebtedness of the firm. *Trentman* v. *Swartzell, supra; Goudy* v. *Werbe, supra; Purple* v. *Farrington, supra.* The finding of facts is silent as to any fraudulent intent in the transaction. The plaintiffs had charged that the sale, transfer, and mortgage were made with·the intent to defraud the creditors of the dissolved firm. They had the burden of that issue and the failure to find such fraudulent intent is equivalent to a finding that there was no fraudulent intent. As was said in *Purple* v. *Farrington, supra:* "Where, however, the partners have the possession and control of their own property, they have the right to make any honest disposition of it they see fit; each has the right to waive his equitable lien, and together they may sell, assign or mortgage the property of the firm, to pay or secure either an individual debt of one of the partners, or the debts of the firm. The equity of the creditors is a derivative one, and arises out of the principles of subrogation, entitling them to enforce the equities subsisting between the partners, so long as the right of any of the partners has not been waived.*   *   * 'The true doctrine is that the property of the partners is their joint property, and they may sell and dispose of the same in good faith as they deem proper;    *   * they have the right to prefer creditors, and even may, if all the partners consent to do so, dispose of the property to satisfy the individual debt of one of the

partners, which would operate to decrease the assets of the firm and to the detriment of the firm creditors, yet, nevertheless, they have such right to secure or pay the *bona fide* debt of one of the partners.'" To the same effect are *Goudy* v. *Werbe, supra; Elliott* v. *Pontius, supra; Henderson* v. *Indiana Trust Co.,* 143 Ind. 561; *Simmons Hardware Co.* v. *Thomas,* 147 Ind. 313, 320, and authorities there cited; *Fisher* v. *Syfers, supra; McFadden* v. *Ross,* 126 Ind. 341. The failure to find whether the transfer and mortgage were made with a fraudulent intent, to cheat, hinder, and delay the creditors of the dissolved firm, did not make the finding defective, so as to require appellant's motion for a *venire de novo* to be awarded; and hence there was no error in overruling the motion therefor. There being no error in the record, the judgment is affirmed.